**In the Matter of C.F., D.O.B. 12–1–79, A Juvenile, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 08–94–00184–CV.

Court of Appeals of Texas, El Paso.

March 30, 1995.

---

Richard L. Ainsa, El Paso, for appellant.

Jose M. Gonzalez, Asst. County Atty., Jose R. Rodriguez, County Atty., Antonio Rodriguez, Asst. County Atty., El Paso, for appellee.

Before LARSEN, McCLURE and CHEW, JJ.

## OPINION

McCLURE, Justice.

### NATURE OF THE CASE

This is a juvenile appeal from an adjudication of delinquent conduct. Perfection of the appeal was attempted by the filing of a notice of appeal. This Court, acting *sua sponte,* gave Notice of Intent to Dismiss for Want of Jurisdiction on January 6, 1995. The Court has received responses to the notice from both parties. We conclude that Appellant made a bona fide attempt to invoke appellate jurisdiction and, in addressing the merits of the appeal, we affirm.

### JURISDICTION

#### 1. Procedural Statement of Facts

Appellant was adjudicated a delinquent in a judgment signed May 5, 1994, and he filed a written Notice of Appeal on May 10, 1994. An order appointing counsel on appeal was signed May 17, 1994. The trial court signed a Judgment of Probation on May 26, 1994. On June 24, 1994, Appellant again filed a written Notice of Appeal coupled with an Affidavit of Inability to Give Cost Bond.

#### 2. Perfection of Appeal in Juvenile Matters

Texas Rules of Appellate Procedure, Rules 40 and 41 establish the process for perfecting an appeal. The normal process for the perfection of a civil appeal is the filing of a cost bond or deposit and the giving of notice of the filing to all other parties. "When security for costs on appeal is required, the bond or affidavit in lieu thereof shall be filed with the clerk within thirty days after the judgment is signed, or, within ninety days after the judgment is signed if a timely motion for new trial has been filed by any party...." Tex.R.App.P. 41(a)(1). Juvenile appeals are governed by the same rules as other civil appeals. Tex.Fam.Code Ann. § 56.01(b) (Vernon 1986 & Supp.1995). Failure of a juvenile to file a cost bond, cash deposit, or affidavit in lieu thereof pursuant to Rules 40 and 41 results in an unperfected

appeal. *In the Matter of P.A.P. v. State*, 739 S.W.2d 476, 476 (Tex.App.—San Antonio 1987, no writ).

The appellate timetable in this appeal was triggered by the trial court's signing of the judgment of delinquency on May 5, 1994. *See* TEX.FAM.CODE ANN. § 56.01(c)(1)(B) (Vernon Supp.1995); TEX.R.APP.P. 5(b)(1). Therefore, Appellant's cost bond or affidavit of inability to pay costs on appeal was due June 4, 1994; because June 4 fell on Saturday, the deadline extended to Monday, June 6, 1994. TEX.R.APP.P. 41(a)(1) & 5(a). A motion for extension of time to file cost bond or affidavit of inability to pay would be timely filed no later than June 20, 1994, TEX.R.APP.P. 41(a)(2), such that Appellant's cost bond or affidavit of inability to pay costs on appeal could have been filed June 20, if accompanied by a motion for extension of time. *Id.* Appellant filed his Affidavit of Inability to Give Cost Bond on June 24, 1994. There is no motion for extension of time; there is no motion for new trial. Appellant, therefore, has not perfected an appeal to the *adjudication of delinquency.* Appellant's first Notice of Appeal, on May 10, 1994, was filed timely; however, it simply was not an instrument that operated to perfect an appeal. We thus first conclude that this appeal was not properly perfected. In so doing, we note that a number of intermediate appellate courts, this one included, have dismissed appeals for want of jurisdiction due to errors in perfection. *In the Matter of S.D.G.*, 861 S.W.2d 106 (Tex.App.—Waco 1993, no writ); *In the Matter of A.S.*, 730 S.W.2d 139 (Tex.App.—Corpus Christi 1987, no writ); *In the Matter of P.A.P.*, 739 S.W.2d at 476-77; *In the Matter of R.H.*, 664 S.W.2d 415, 416 (Tex.App.—Corpus Christi 1983, no writ); *In the Matter of R.R.*, 664 S.W.2d 418, 419 (Tex.App.—Corpus Christi 1983, no writ); *see also Wilcox v. Seelbinder*, 840 S.W.2d 680 (Tex.App.—El Paso 1992, writ denied). Only *Wilcox* reflects a writ history and although it does not encompass an appeal from juvenile proceedings, it does address the error of filing a notice of appeal rather than an appeal bond or cash deposit in lieu thereof. The juvenile case of *In the Matter of S.D.G.* postdates but does not reference the Supreme Court's pivotal opinion in *Grand Prairie In-dep. School Dist. v. Southern Parts Imports, Inc.*, 813 S.W.2d 499 (Tex.1991), wherein that Court held that if an appellant timely files a document in a bona fide attempt to invoke the appellate court's jurisdiction, the court of appeals, on appellant's motion, must allow the appellant an opportunity to amend or refile the instrument required by law to perfect appeal. *Wilcox* distinguishes *Grand Prairie* on the facts, noting that the Grand Prairie Independent School District had a good faith argument that it was exempt from the requirement of filing a cost bond on appeal whereas appellant Wilcox failed to advance any argument asserting his exemption from the required filing of a cost bond. Finding Wilcox made no bona fide attempt to invoke appellate jurisdiction, this Court dismissed the appeal for want of jurisdiction.

We therefore must address *Grand Prairie* and its progeny in order to determine the present status of bona fide attempts to invoke appellate jurisdiction.

### 3. Bona Fide Attempt to Invoke Appellate Jurisdiction

■ In *Grand Prairie*, the school district filed a notice of appeal when it was required instead to file an appeal bond in order to perfect appeal. The Court of Appeals dismissed the appeal for want of jurisdiction and denied leave to file an appeal bond to reinstate the appeal. The Supreme Court reversed, noting that it had previously held that an appellant should be given an opportunity to amend a defective bond, cash deposit in lieu of bond, or affidavit of inability before an appeal may be dismissed and that a court of appeals has jurisdiction over any appeal in which the appellant files an instrument that "was filed in a bona fide attempt to invoke appellate court jurisdiction." The Court also addressed Rules 46(f) and 83, TEX.R.APP.P., noting that the former adopts a liberal policy of permitting appellants to amend bonds and the latter prohibits an appeal from being dismissed for defects or irregularities in appellate procedure, either of form or substance, without allowing an opportunity to cure. The Court then concluded:

On the authority of Rule 83, we now extend our prior rulings and hold that a

court of appeals may not dismiss an appeal when the appellant filed the wrong instrument required to perfect the appeal without giving the appellant an opportunity to correct the error. If the appellant timely files a document in a bona fide attempt to invoke the appellate court's jurisdiction, the court of appeals, on appellant's motion, must allow the appellant an opportunity to amend or refile the instrument required by law or our Rules to perfect the appeal. *Grand Prairie,* 813 S.W.2d at 500. The case implicitly overrules the juvenile dismissals which predate it, although there appears no apparent rationale for the denial of the application for writ of error in *Wilcox.*

The Supreme Court has continued to liberally construe the *Grand Prairie* mandate. In *Maxfield v. Terry,* 888 S.W.2d 809 (Tex. 1994) (per curiam), the Court considered the appeal of two probate orders, one involving an application for letters of administration and one involving a declaratory judgment action. Each order was filed under a separate cause number and each constituted a final appealable order. The appellant filed a cash deposit in lieu of bond with regard to the letters of administration but filed nothing with regard to the declaratory judgment order. His points of error on appeal assigned as error decisions of the trial court with regard to both orders. The appellee moved to sever and dismiss a portion of the appeal for want of jurisdiction and this motion was ultimately granted by the court of appeals. In reversing, the Supreme Court noted that despite the rule that a party must file a separate cost bond, cash deposit or affidavit of inability for each appealable order, the intermediate appellate court should have given the appellant the opportunity to correct the defect before dismissing the appeal.

And again in *Linwood v. NCNB Texas,* 885 S.W.2d 102 (Tex.1994), the Supreme Court reversed the dismissal of an appeal. Linwood filed a notice of appeal within ten days of judgment and a cost bond on the fifty-third day after judgment. No motion for

new trial was filed, although a request for findings of fact and conclusions of law was timely filed. Despite noting that in a summary judgment proceeding, a request for findings of fact will not extend the appellate timetable such that perfection of appeal was required within thirty days of judgment, the Court concluded that the appellant had made a bona fide attempt to invoke appellate jurisdiction within the thirty-day window by filing the notice of appeal. This defective attempt was cured when the cost bond was later filed.

This Court has attempted to take guidance from the Supreme Court's policy of a liberal construction of perfection of appeal. In *In the Matter of J.C. v. State,* 892 S.W.2d 85 (Tex.App.—El Paso, 1994, no writ), the Court considered an attempt to perfect appeal by notice of appeal in a juvenile proceeding. Examination of the record in that case, however, revealed timely filed sworn statements indicating the juvenile's father was unable to pay for an attorney on appeal or for a transcript or statement of facts. *Id.,* at 86. This Court held that timely affidavits in the record, though not specifically addressing the appellant's inability to pay costs on appeal, adequately invoked the jurisdiction of the court of appeals. *Id.,* at 86. While there are no affidavits in the instant case which were timely filed as to the adjudication of delinquency, the record does reflect that the trial court appointed an attorney to represent appellant on appeal.

While there are two distinct appealable orders in question in the instant case [the adjudication of delinquency, TEX.FAM.CODE ANN. § 56.01(c)(1)(B), and the judgment of probation, TEX.FAM.CODE ANN. § 56.01(c)(1)(C) ] and while Appellant's brief assigns error only with regard to the adjudication proceeding, we conclude that Appellant made a bona fide attempt to invoke appellate jurisdiction when he filed the first notice of appeal. This defect was cured when Appellant later filed an affidavit of inability to pay appellate expenses.[1] *See,*

---

**1.** Although the Supreme Court in *Maxfield* required the appellant to cure, purportedly by filing a cost bond with regard to the unperfected appeal, we do not conclude that additional steps are required by the juvenile herein. The two orders in *Maxfield* arose out of separate actions under separate cause numbers. In the instant case, the two appealable orders arose out of the same cause of action, the petition based on delinquent conduct, under the same cause number.

e.g., *Maxfield,* 888 S.W.2d at 811; *Linwood,* 885 S.W.2d at 103.

We caution practitioners that although juvenile proceedings frequently involve seemingly criminal offenses and penalties, appeals from juvenile proceedings are deemed civil in nature by statute. And while proposed changes in the Texas Rules of Appellate Procedure encompass perfection of appeal in all cases by the filing of a notice of appeal, until adoption of the proposed rules by the Supreme Court or until action by the Legislature in adopting proposed amendments to the Texas Family Code to require juvenile appeals to be conducted as in criminal cases generally, greater caution is advised.

Having determined that we may exercise our jurisdiction in this cause, we proceed to address the merits of the appeal.

## STATEMENT OF THE EVIDENCE

Appellant, C.F., was accused of engaging in delinquent conduct by committing the offense of indecency with a child. While in the backyard of his next-door neighbor's home, he allegedly drew a blanket over J.L., a child of seven years of age, pulled down her shorts and panties, and touched and licked her vagina. The child made an outcry to her mother that same evening and the police were called. In her statement to the police, J.L. indicated that Appellant had done the same thing to her "last year after we had a Halloween party at my grandmother's house." J.L., her mother ("Mrs. L."), and Dr. Juan Montelongo testified on behalf of the State.

Both the original petition and first amended petition alleged that the offense occurred on August 1, 1993. The second amended petition changed the date of the offense to September 7, 1993.[2] J.L.'s mother testified that she came home from work on September 7 at approximately 7 p.m. and that J.L. and her sister were inside the home. Shortly thereafter, the girls went outside to play with neighborhood children, including C.F. The first time Mrs. L. saw Appellant that eve-

ning, he was playing with the other children in the backyard. When she looked outside a little later, J.L., Appellant, and another child were in the backyard. Ten minutes later, Mrs. L. looked outside again from the kitchen window and this time she saw only Appellant, who was covered with a blanket. Mrs. L. admitted that she did not see Appellant and J.L. alone together in the backyard, although she told the police that she had. When Appellant saw Mrs. L., he removed the blanket. Mrs. L. asked him where E.L., her older daughter, was and Appellant replied that she was in the front yard. Mrs. L. went out to talk with E.L. and as she came back into the house, she saw J.L. coming into the house from the backyard. At that point, Mrs. L. told both of her daughters to take their baths. When Mrs. L. asked J.L. what she was doing in the backyard with Appellant, the child told her that they had been lying on a bench, Appellant had lowered her shorts and her panties and he was touching her with his hand and with his tongue. Mrs. L. also testified that J.L. was examined by a doctor the next day and that during the examination, J.L. reported that Appellant had done the same thing to her at other times. The record reflects conflicting evidence concerning the purported prior occurrences. The statement J.L. gave to the police mentions an occurrence after a Halloween party at her grandmother's home. The very next sentence, however, reveals that the prior event also occurred on a bench in J.L.'s backyard. At trial, both J.L. and her mother stated that Halloween was merely a reference point, i.e., she remembered the Halloween party and she remembered that the event occurred at some point in time after the party.

Appellant's mother testified that Appellant was not living in El Paso at or around Halloween of 1992, the family having lived in California and Nevada from 1985 until February 1993. Appellant was at home in El Paso, however, on September 7, 1993.

---

Since no effort has been made to appeal from the disposition, we are faced with only one appeal and we interpret the filing of the affidavit of inability as the perfection document from the adjudication proceeding.

**2.** These dates are significant inasmuch as Appellant's mother testified that Appellant was in California on August 1, 1993.

J.L. testified at trial using anatomically correct dolls and stated that Appellant had touched her with his hand and tongue on her vagina. She had been under the blanket when her mother came outside to talk to Appellant.

Dr. Montelongo testified that he is an emergency room physician at Sierra Medical Center and that he examined J.L. on September 8th. His findings were negative with regard to any evidence of trauma to the genital area, but the absence of trauma did not surprise him. He stated that it would take a tremendous amount of force placed with the mouth to result in abrasions or abnormalities as a result of the genital licking. Trauma from the fondling or touching would depend on the digital penetration by the hand and the amount of force used. He concluded that it is not unusual for there to be a lack of evidence of trauma in such situations.

Evidence for the defense included the police officer, Appellant's mother and sister ("S.F."), and Appellant himself. The officer testified from the police report that the incident was reported on September 7 and was to have occurred on August 1. He explained on cross-examination that the report bore a computer printout heading that is taken off of the number 1 report when it is entered into the computer reflecting that the incident occurred sometime between August 1 and September 7. S.F. testified that J.L. and Appellant were never alone together on the night of September 7. Appellant likewise testified that he had not been alone with J.L. and that he had not ever done the things of which he was accused.

### SUFFICIENCY OF PETITION

In Point of Error No. One, Appellant urges that the adjudication of delinquent conduct is based upon an allegation which is fundamentally defective. He argues that the State's second amended petition alleged that Appellant engaged in delinquent conduct by committing the offense of indecency with a child by intentionally and knowingly engaging in sexual contact with said child in violation of Section 21.11(a)(1) of the Texas Penal Code. He assigns as error the fact that the State failed to allege that the sexual contact was made with the intent to arouse or gratify the sexual desire of any person. This failure he claims to be fundamental error which may be raised for the first time on appeal.

Section 21.11 states in pertinent part:

(a) A person commits an offense if, with a child younger than 17 years of age and not his spouse, whether the child is of the same or opposite sex, he:

(1) engages in sexual contact with the child; or

(2) exposes his anus or any part of his genitals, knowing the child is present, with intent to arouse or gratify the sexual desire of any person.

TEX.PENAL CODE ANN. § 21.11(a)(1), (2) (Vernon 1994). "Sexual contact" is defined in Section 21.01 as "any touching of the anus, breast, or any part of the genitals of another person with intent to arouse or gratify the sexual desire of any person." TEX.PENAL CODE ANN. § 21.01(2). The State contends that the petition tracked the statutory language of the offense, and that while all essential elements of an offense must be alleged in an indictment, an indictment which tracks the statutory language of the offense is generally sufficient in the face of a motion to quash. Further, the State argues that inasmuch as the terms and elements of the offense are defined within the Penal Code, the definition of what constitutes "sexual contact" is essentially evidentiary and need not be specifically alleged. The authority cited for these propositions do not involve the offense of indecency with a child and the Court of Criminal Appeals has not so construed the statutes. Repeatedly, that Court has held that with regard to the offense of indecency with a child, an indictment must allege both the act and the accompanying mental state because the accompanying mental state is a part of the conduct. "Elements of an offense" mean the "forbidden conduct" plus the required culpability. Failure to specifically allege that the sexual contact occurred with the intent to arouse or gratify the sexual desire of any person constitutes reversible error, regardless of whether a motion to

quash is filed. *Wesley v. State,* 548 S.W.2d 37 (Tex.Crim.App.1977); *Slavin v. State,* 548 S.W.2d 30 (Tex.Crim.App.1977); *Polk v. State,* 547 S.W.2d 605 (Tex.Crim.App.1977); *Victory v. State,* 547 S.W.2d 1 (Tex.Crim. App.1976). Were this a traditional criminal appeal, we would unquestionably be required to reverse the adjudication.

■ Instead, we are presented not with a formal indictment in an adult criminal proceeding but with a juvenile proceeding commenced by the filing of a petition pursuant to TEX.FAM.CODE ANN. § 53.04 (Vernon 1986). That section requires in pertinent part that the petition state with reasonable particularity the time, place, and manner of the acts alleged and the penal law or standard of conduct allegedly violated by the acts. The petition in question states:

> That said child engaged in delinquent conduct, to wit: the above named child engaged in conduct other than a traffic offense, which violated a penal law of this State punishable by imprisonment in that heretofore, to wit: on or about the 7th day of September, 1993, and anterior to the presentment of this petition, in the County of El Paso and State of Texas, the said [C.F.] did then and there intentionally and knowingly engage in sexual contact with [J.L.], a child younger than 17 years and not the spouse of the said [C.F.], in violation of section 21.11 of the Texas Penal Code.

This Court has previously addressed the requisite sufficiency of a petition in a juvenile proceeding. In *In re P.B.C.,* 538 S.W.2d 448, 450 (Tex.Civ.App.—El Paso 1976, no writ), a juvenile complained that the petition to certify did not specify and affirmatively allege the matters intended to be proved and failed to allege the penal law violated by the acts of the minor. There, the petition stated that P.B.C. had violated the penal law of the grade of felony and enumerated five separate offenses of knowingly and intentionally delivering a controlled substance, namely methamphetamine and heroin, to another person. This Court noted that there was no allegation as to the specific penal law involved and that the better practice would be to specify the statutory violation. However, the Court con-

cluded that the petition was in sufficient compliance because the offense was stated with particularity. The Court also referenced the commentary on the Family Code provision as found in 5 TEX.TECH.L.REV. 550 (1974):

> Subsection (d) specifies the information that must be included in the petition. Paragraph (1) requires an allegation with reasonable particularity of the time, place, and manner of the acts alleged and the penal law or standard of conduct allegedly violated by the acts. The intent of the committee was that the petition not only allege the essential facts, but also state which statute is relied upon to give the juvenile court jurisdiction. For example, a petition which merely alleged that the child engaged in delinquent conduct because he violated a law of the grade of felony would not be sufficient. A petition would be sufficient, however, if in addition to the allegation of essential facts it alleged that the offense of burglary was committed by the child or that a particular section in the Penal Code was violated by the child.

■ Further, the Supreme Court has reiterated that although juvenile delinquency proceedings are civil in nature, the minor is nonetheless entitled to the essentials of due process and fair treatment. *L.G.R. v. State,* 724 S.W.2d 775 (Tex.1987); *In the Matter of J.R.R.,* 696 S.W.2d 382 (Tex.1985). In juvenile cases, the child must know of the specific issues he is to meet and they must be set forth with particularity. *In re Gault,* 387 U.S. 1, 33, 87 S.Ct. 1428, 1446, 18 L.Ed.2d 527, 549 (1967).

In the instant cause, the petition sufficiently identifies the acts allegedly committed by the juvenile, to-wit sexual contact with J.L., and it identifies the precise provision of the Penal Code which was allegedly violated. Section 21.11 identifies the prohibited act as "sexual contact," which is defined in Section 21.01 as requiring the culpable mental state. We find that the petition constitutes sufficient notice to apprise Appellant of the acts alleged and the matters to be proved. Point of Error No. One is overruled.

## SUFFICIENCY OF THE EVIDENCE

 In Point of Error No. Two, Appellant alleges that the trial court erred in overruling his motion for directed verdict because there was insufficient evidence to prove beyond a reasonable doubt that he engaged in the delinquent conduct alleged. The ground asserted in the motion for directed verdict was that the State had failed to prove that the sexual contact was made with the intent to arouse or gratify the sexual desire of Appellant or any other person. Because the language of the point of error does not specify whether Appellant challenges the legal or factual sufficiency of the evidence, we will address both.

### 1. Legal Sufficiency ("No evidence")

 In reviewing the sufficiency of the evidence to support a traditional criminal conviction, we must review *all* the evidence, both State and defense, in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Geesa v. State*, 820 S.W.2d 154 (Tex.Crim.App.1991). This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573. The standard of review is the same for both direct evidence and circumstantial evidence cases. *Geesa*, 820 S.W.2d at 158. When a juvenile challenges the legal sufficiency of the evidence in the peculiar civil/criminal hybrid known as juvenile proceedings, the appellate court is likewise required to consider only the evidence and inferences tending to support the findings under attack. *In the Matter of L.G.*, 728 S.W.2d 939, 943 (Tex. App.—Austin 1987, writ ref'd n.r.e.); *In the Matter of A.B.R.*, 596 S.W.2d 615, 618 (Tex. Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). If there is any evidence of probative force to support the jury's finding, the point must be overruled and the finding upheld. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951) (per curiam).

 The evidence, when viewed in the light most favorable to the verdict, reflects that Appellant approached J.L. as she sat on a wooden bench; that when the other children left the vicinity, he covered himself and J.L. with a blanket; that he removed her shorts and panties; and that he both touched and licked her vagina. The State was required to establish that Appellant touched J.L.'s female sexual organ with the intent to arouse or gratify his sexual desires. Tex.Penal Code Ann. §§ 21.01(2), 21.11. The requisite specific intent can be inferred from the juvenile's conduct, his remarks, and all the surrounding circumstances. *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex.Crim.App. 1981); *Fetterolf v. State*, 782 S.W.2d 927, 933 (Tex.App.—Houston [14th Dist.] 1989, pet. ref'd). Although Appellant asserts that the record reflects that there was no evidence presented by the State that he ever said anything to J.L., we find that this argument lacks merit for two reasons. First, there is no requirement of a verbal expression of intent. The conduct in and of itself is sufficient to infer intent. *See Gottlich v. State*, 822 S.W.2d 734, 741 (Tex.App.—Fort Worth 1992, pet. ref'd) (evidence that defendant placed his hand inside panties of complainant and played with her "private" was sufficient to support a finding of intent to arouse or gratify); *Hill v. State*, 852 S.W.2d 769, 771 (Tex.App.—Fort Worth 1993, pet. ref'd) (evidence that defendant placed his mouth on complainant's sexual organ was sufficient to support a finding that he acted with intent to arouse or gratify his sexual desires); *Fetterolf*, 782 S.W.2d at 933 (testimony that defendant circled complainant's breast with his hand was sufficient to support a finding of intent to arouse or gratify). Second, although there is no allegation that Appellant made any statements during the September 7 incident, a defense exhibit admitted into evidence clearly reflects that Appellant had on a previous occasion engaged in sexual contact with J.L. and that he had told her on that occasion to "touch his private part between his legs." His repeat conduct gives rise to the conclusion that he acted with intent to arouse or gratify his sexual desire. We find that a rational trier of fact could

infer from the evidence that Appellant acted with the requisite intent.

### 2. Factual Sufficiency

■■■ We also address the question of whether there is factually sufficient evidence to support the jury finding that Appellant engaged in sexual contact with J.L. Juvenile proceedings are conducted in accordance with the Texas Rules of Civil Procedure except when the rules conflict with a provision of Title 3 of the Texas Family Code. TEX. FAM.CODE ANN. § 51.17 (Vernon 1986); *In the Matter of M.R.*, 858 S.W.2d 365, 366 (Tex.1993). A motion for new trial is a prerequisite to an appellate complaint of factual insufficiency of the evidence to support a jury finding. Rule 324(b)(2), TEX.R.CIV.P. Appellant filed no motion for new trial in compliance with this rule. We must thus address whether this failure results in a waiver of his complaints. The Supreme Court of Texas has specifically addressed this issue in *In the Matter of M.R.*, 858 S.W.2d at 365. The Court of Appeals had concluded that in a delinquency proceeding, the State is required to prove the elements of the crime beyond a reasonable doubt, as in an adult prosecution, and not by a preponderance of the evidence; thus, the logical conclusion should be that inasmuch as a motion for new trial is not required to challenge the sufficiency of the evidence in a criminal appeal, it should not be required in a juvenile proceeding. The Supreme Court disagreed, noting that nothing in Title 3 of the Texas Family Code conflicts with the Rules of Civil Procedure requirement of motions for new trial as a prerequisite to asserting evidentiary and procedural errors, including factual sufficiency, and concluding that the court of appeals had erroneously exempted juveniles appealing delinquency judgments from the procedural requirement. We thus conclude that Appellant has waived his right to complain of the factual sufficiency of the evidence to support the jury's finding that he engaged in the delinquent conduct alleged. Point of Error No. Two is accordingly overruled.

### DISCRETION TO REOPEN TESTIMONY

■■■ In Point of Error No. Three, Appellant alleges that the trial court erred in twice permitting the State to reopen its case to offer additional evidence. After the State had rested, Appellant presented his motion for directed verdict alleging that the State had failed to offer any evidence pertaining to the element of the offense that J.L. was not the spouse of C.F. The State then moved to reopen over the juvenile's objection and presented additional testimony from Mrs. L. that "her daughter" was not married to the juvenile. The State rested again, prompting Appellant to offer yet another motion for directed verdict on the basis that Mrs. L. had not identified which of her two daughters she was referring to when she testified that "her daughter" was not married to C.F. The State moved to reopen a second time, and over the objection of the juvenile, presented still more specific testimony from Mrs. L. that her daughter, J.L., was not married to C.F.

■■■ Appellant concedes that the decision of whether to permit the State to reopen its case in the due administration of justice rests within the sound discretion of the trial court. Rule 270, TEX.R.CIV.P.; *Turner v. Lone Star Industries, Inc.*, 733 S.W.2d 242, 245 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). Citing *Kroger Company v. Cellan*, 560 S.W.2d 505 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.), he argues that there must nevertheless be a showing of diligence on the part of the movant in making such a request and that the State in the instant cause neglected to demonstrate such diligence. We disagree. The trial court's action in ruling upon a motion to reopen the evidence should not be disturbed on appeal unless it clearly appears that the court has abused its discretion. *Word of Faith World Outreach Center Church, Inc. v. Oechsner*, 669 S.W.2d 364, 367 (Tex.App.—Dallas 1984, no writ); *Guerrero v. Standard Alloys Mfg. Co.*, 598 S.W.2d 656, 658 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.). The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action. Instead, it is a question of whether the trial court acted without reference to any

guiding rules and principles or whether the act was arbitrary and unreasonable. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). The fact that a trial judge may decide a matter within his or her discretion in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Id.* at 242. In applying this test, we look first to the actual testimony elicited during the State's case in chief.[3] Mrs. L. testified on direct examination as follows:

Q: What is your relationship to [J.L.]?

A: I am [J.L.'s] mom.

Q: How old is she?

A: Eight years old.

Q: Do you have any other sons or daughters?

A: I have another daughter.

Q: What is her name and her age?

A: [E.L.], and she's eleven years old.

Q: **Is your daughter, [J.L.], married?**

A: **No.** [Emphasis added.]

 Testimony by the mother of a child/victim that her daughter is not the spouse of the accused is sufficient to meet the statutory requirement that the victim was not the spouse of the accused. *Hill v. State,* 852 S.W.2d 769, 771 (Tex.App.—Fort Worth 1993, pet ref'd). If J.L. is not married, then she cannot be married to or the spouse of anyone in general and C.F. in particular. When the motion for directed verdict was first urged, the State, out of an abundance of caution, asked to reopen its case, whereupon the following testimony was elicited from Mrs. L.:

Q: [Mrs. L.], is your daughter married to [C.F.] at the present time?

A: No.

Q: Okay, on September 7th, 1993, was she married to [C.F.]?

A: No.

Q: Has she ever been married to [C.F.]?

A: No, never.

Q: Have you ever signed any kind of document giving her permission to marry [C.F.]?

A: No, never.

Q: Has your husband or ex-husband ever signed any documentation, to your knowledge, giving your daughter knowledge [sic] to marry [C.F.]?

A: No, never.

When the motion for directed verdict was re-urged, the State then reopened again, specifically asking Mrs. L. if she had been referring to J.L. in her testimony, to which Mrs. L. responded in the affirmative.

We find that because the State exercised diligence in eliciting the necessary testimony during its case in chief that the decision of the trial court to allow the State to reopen twice was not an abuse of discretion. Even assuming that it were an abuse of discretion, any error is harmless inasmuch as the testimony elicited during the State's primary case was sufficient to establish that J.L. was not the spouse of C.F. at the time of the alleged offense. Accordingly, Point of Error No. Three is overruled.

## CONCLUSION

While we find that the Court does have jurisdiction to review the adjudication of delinquency on appeal, in reviewing the merits we conclude that Points of Error Nos. One, Two, and Three should be overruled. The judgment of the trial court is affirmed.

---

3. Some of the confusion may stem from the fact that Mrs. L. testified twice during the State's case in chief. Her first testimony was conducted out of the presence of the jury for purposes of complying with Section 54.031, Tex.Fam.Code Ann. At that point, Mrs. L. testified that J.L. was her daughter, that she had two daughters, and that "her daughter" was not married. Were this the extent of the testimony heard by the jury, our determination of Point of Error No. Three may well differ.