# NO. 12-09-00371-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *WILLIE NORMAN PURVIS,*<br>*APPELLANT* | § | *APPEAL FROM THE 217TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *ANGELINA COUNTY, TEXAS* |

---

### *MEMORANDUM OPINION*

Willie Norman Purvis appeals his conviction of two counts of indecency with a child. In two issues, Appellant challenges the legal and factual sufficiency of the evidence to show he had the intent to arouse or gratify his sexual desire. We affirm.

### BACKGROUND

J.G., a four year old boy, and D.J., a five year old boy, were both foster children through Child Protective Services (CPS). White, Appellant's mother, kept the children in her home. J.G. lived with White between the ages of four months and ten to eighteen months[1] and then returned to live with his mother, Sarah. Periodically, J.G. visited White again for up to weeks at a time. D.J. lived with White, whom he called "Granny," for about a year.

On July 7, 2008, J.G. told Sarah that Appellant would "mess with his butt, touch his butt, dig in his booty, make me sit on his lap." Later that day, D.J. came over to J.G.'s house to swim with J.G., and D.J. confirmed J.G.'s account of the events. D.J. also told Sarah that Appellant "whooped" J.G. when Granny was not present and that Appellant took off their clothes. His description of Appellant's conduct was the same as J.G.'s, but he said that it happened to J.G. more. Sarah then took the two boys to a police station in Lufkin, Texas, where she signed a written statement in which she related that the boys told her they had been subjected to ongoing molestation by Appellant. According to Sarah's statement, the boys told her that Appellant made

---

[1] There is conflicting testimony about the age at which J.G. left White's home. His mother testified that he left at around eight to ten months, while White testified he left at eighteen months.

them get naked and hump up their butts backward. He would then dig in their butts and play with their penises while fondling himself. Investigations revealed that the alleged sexual contact took place in White's home. Both D.J. and J.G. were interviewed and physically examined. Both children were able to pick Appellant out of a lineup as the man who molested them. Appellant was charged by indictment with one count of aggravated sexual assault of a child and three counts of indecency with a child.

The case was tried to the court without a jury. At the conclusion of the trial, the trial court found Appellant guilty of two counts of indecency with a child, as a lesser included offense of Count I of the indictment naming J.G. and as charged in Count IV of the indictment naming D.J.[2] The trial court sentenced Appellant to fifteen years of imprisonment. Appellant filed a motion for a new trial, which was overruled by operation of law, and this appeal followed.

## SUFFICIENCY OF THE EVIDENCE

In his first and second issues, Appellant challenges the legal and factual sufficiency of the evidence supporting Appellant's convictions of indecency with a child. Specifically, Appellant asserts that there is no evidence to show he had the intent to arouse or gratify his sexual desire. He also claims that he presented evidence that affirmatively negated the element of intent with regard to the charge related to J.G.

**Standard of Review**

The Texas Court of Criminal Appeals recently held that the *Jackson v. Virginia* legal sufficiency standard is the only standard a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *See Brooks v. State,* 323 S.W.3d 893, 894 (Tex. Crim. App. 2010) (plurality op.). Accordingly, we will not independently consider Appellant's challenge to the factual sufficiency of the evidence. Under the single sufficiency standard, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct, 2781, 2789, 61 L. Ed. 2d 560, 573 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We also defer to the trier of fact's responsibility to resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from basic facts to ultimate facts. *Jackson,* 443 U.S. at 319, 99 S. Ct at 2789. *Hooper*, 214 S.W.3d at 13. Every fact does not need to point directly and independently to the guilt of the

---

[2] The original judgment incorrectly stated that Appellant was convicted of Count I and Count II. The trial court entered a corrected judgment, which stated that Appellant was found guilty under Counts I and IV. The trial court later entered a third judgment of conviction entitled "Nunc Pro Tunc Judgment of Conviction" correcting the numbers of the counts stated in the "Date of Offense" section of the judgment.

appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. Circumstantial evidence is as probative as direct evidence in establishing guilt and may alone be sufficient to establish guilt. *Id*. On appeal, the same standard of review is used for both circumstantial and direct evidence cases. *Id*.

To obtain a conviction for indecency with a child by contact in this case, the State was required to prove beyond a reasonable doubt that Appellant engaged in sexual contact with the victim or caused the victim to engage in sexual contact with him, and that the victim was younger than seventeen years of age. *See* TEX. PENAL CODE ANN. § 21.11(a)(1) (Vernon Supp. 2010). "Sexual contact" means "any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person" "if committed with the intent to arouse or gratify the sexual desire of any person." *Id*. § 21.11(c) (Vernon Supp. 2010). A person acts intentionally with respect to the nature of his conduct when it is his conscious objective or desire to engage in the conduct; a person acts knowingly with respect to the nature of his conduct when he is aware of the nature of his conduct. *Id*. § 6.03(a), (b) (Vernon 2003).

**Applicable Law**

The requisite specific intent to arouse or gratify the sexual desire of any person can be inferred from the defendant's conduct, his remarks, and all surrounding circumstances. *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. [Panel Op.] 1981); *Breckenridge v. State*, 40 S.W.3d 118, 128 (Tex. App.–San Antonio 2000, pet. ref'd). A verbal expression of intent is not required. *C.F. v. State*, 897 S.W.2d 464, 472 (Tex. App.–El Paso 1995, no writ). The conduct in and of itself is sufficient to infer intent. *Id*.; *see also, e.g.*, *Hill v. State*, 852 S.W.2d 769, 771 (Tex. App.–Fort Worth 1993, pet. ref'd) (evidence that defendant placed his mouth on complainant's sexual organ was sufficient to support a finding that he acted with intent to arouse or gratify his sexual desires); *Gottlich v. State*, 822 S.W.2d 734, 741 (Tex. App.–Fort Worth 1992, pet. ref'd) (evidence that defendant placed his hand inside panties of complainant and played with her "private" was sufficient to support a finding of intent to arouse or gratify), *abrogated on other grounds by Arevalo v. State*, 943 S.W.2d 887 (Tex. Crim. App. 1997); *Fetterolf v. State*, 782 S.W.2d 927, 933 (Tex. App.–Houston [14th Dist.] 1989, pet. ref'd) (testimony that defendant circled complainant's breast with his hand was sufficient to support a finding of intent to arouse or gratify).

**Discussion**

Viewing the evidence in the light most favorable to the trial court's finding of guilt, D.J. told the sexual assault nurse examiner who examined him that Appellant touched "my private" and pointed to the picture of the penis of a male diagram. He also told her that "he put a finger

in my behind" and pointed to the picture of the buttocks of a male diagram. D.J. related further to the nurse examiner that Appellant "took his clothes off of him" at Granny's house. Laura Smith, a professional counselor in private practice who works with children who are in CPS custody, counseled D.J. During her session with him on July 17, 2008, D.J. stated that Appellant touched D.J.'s private with his hands and told him to pull down his pants. Appellant then put him on the bed, pulled down his pants, and touched him with the top of his hand nine or ten times. In another session approximately ten months later, D.J. demonstrated on an anatomically correct doll what happened with Appellant in the past and told Smith that Appellant had "pulled down his pants and underwear and touched his bare penis." D.J. testified that Appellant touched his genitals one time in D.J's room at Granny's house while he was watching TV. D.J. told Appellant to stop but Appellant did not comply. The State also introduced into evidence and played a video of D.J.'s forensic interview. During this interview, D.J. described how, on more than one occasion, Appellant touched his penis and his "behind" and that Appellant removed D.J.'s clothes and underwear in his room at Granny's house. The trial court, as the trier of fact, could reasonably infer intent to arouse and gratify Appellant's sexual desire from Appellant's conduct in removing D.J.'s clothes, touching D.J.'s penis, and putting a finger in D.J.'s "behind." See *Gottlich*, 822 S.W.2d at 741; *Fetterolf*, 782 S.W.2d at 933.

Viewing the evidence in the light most favorable to the trial court's finding of guilt, J.G. told Sarah that Appellant would "mess with his butt, touch his butt, dig in his booty, make me sit on his lap." Further, D.J. also confirmed J.G.'s account of the events. In her written statement, Sarah related that the boys told her they had been subjected to ongoing molestation by Appellant. Specifically, she said they told her that he makes them get naked and hump up their butt backward. They said he then digs in their butts and plays with their penises while fondling himself. The sexual assault nurse examiner who examined J.G. stated that J.G. told her Appellant put "his stick in my booty five times" and pointed to his buttocks to explain the term "booty." Further, J.G. testified and showed on an anatomically correct doll that Appellant touched him on the butt[3] with his hand. The State also introduced into evidence and played a video of J.G.'s forensic interview. During this interview, J.G. stated that when Appellant "hoffed" on him, he used J.G's butt and Appellant's hands, "digs in my booty," and "touches [my] booty with a stick." He also said that it hurt. J.G. demonstrated by using an anatomically correct doll that "hoffing" means Appellant got on top of him. The trial court, as the trier of fact, could reasonably infer intent to arouse and gratify Appellant's sexual desire from Appellant's conduct in laying on top of J.G., making J.G. get naked, hump up his butt backward, digging in

---

[3] When looking at the back of the doll, J.G. used the word "butt." The State requested that the record reflect that when J.G. said "butt," the State was pointing to the doll's anus.

his butt and playing with his penis while Appellant fondled himself. *See **Gottlich***, 822 S.W.2d at 741; ***Fetterolf***, 782 S.W.2d at 933.

Appellant points out, however, that the record contains evidence contrary to the trial court's finding of guilt. Specifically, he calls our attention to his testimony that he never touched any of the boys in a sexual manner. Appellant also notes that he tickled J.G. on one occasion while Granny was present, but that any contact with J.G.'s genitals was accidental. Although this testimony evidence is contrary to the trial court's finding of guilt, we defer to the trier of fact to resolve any conflicts in the testimony, to weigh the evidence, and to draw inferences. ***Jackson***, 443 U.S. at 319; ***Hooper***, 214 S.W.3d at 13. The trier of fact was free to believe the testimony that Appellant touched D.J. and J.G. on the anus or genitals in the manner they described.

In summary, the trial court's resolution of the disputed factual issues was reasonable. After viewing the evidence in a light favorable to the verdict, we hold that a rational fact finder could have concluded that the State proved the element of intent to arouse or gratify sexual desire beyond a reasonable doubt. Therefore, the evidence is legally sufficient to support the trial court's finding of guilt. We overrule Appellant's first and second issues.

## DISPOSITION

We ***affirm*** the judgment of the trial court.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered April 6, 2011.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)

5