COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | § | |
|---|---|---|
| ISMAEL MENDOZA, | | No. 08-12-00125-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | 120th Judicial District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20100D04944) |
| | § | |

## **O P I N I O N**

Ismael Mendoza appeals the trial court's judgments convicting him of two counts of indecency with a child.   In two issues, Mendoza challenges the sufficiency of the evidence and the victim's in-court identification of him.   We affirm.

### **FACTUAL AND PROCEDURAL BACKGROUND**

Mendoza was indicted for indecency with a child, J.M.T., the son of his then-girlfriend. At trial, J.M.T. testified that "Smiles" "tickl[ed] [him] in the private parts, just to make fun of, but [he] didn't like it."   J.M.T. also testified that Smiles exposed his penis to him and, while doing so, made breathing sounds.   J.M.T. described Smiles's penis as "hairy[,]" "this long[,]" "this wide[,]" and "[h]ard as a stick."   When asked if he saw Smiles in the courtroom, J.M.T. responded that he did not.   The following exchange then occurred:

[PROSECUTOR]: Do you remember what Smiles used to look like?

[J.M.T.]: Smiles looked like -- he had a pimple here.

[PROSECUTOR]: What did his hair look like?

[J.M.T.]: Long.   All the way here (indicating).

.                    .                    .

[PROSECUTOR]: Your Honor, I'm tendering defense counsel what's marked as State's Exhibit Number 30.

[DEFENSE COUNSEL]: Your Honor, may we approach?

[THE COURT]: Yes.

.                    .                    .

[DEFENSE COUNSEL]: Your Honor, this is going to be the same as the photo lineup -- if they want to put additional pictures.   I mean, he's the only one.   It's too suggestive.   If he can't identify him and he's sitting right there, if they want to show him this, I would ask that they put another four people or –

[THE COURT]: The first is someone else doing an identification.   They're going to ask if he knows who this is.   He has not identified your client in court.

[DEFENSE COUNSEL]: I think that's --

[DEFENSE COUNSEL]: I think that's the next question, Judge.

[THE COURT]: Right.   They're going to ask if he knows who this is.

[DEFENSE COUNSEL]: Okay.

[PROSECUTOR]: Uh-huh.

[THE COURT]: I think they can ask him about those pictures, either he can or he can't.

[DEFENSE COUNSEL]: Okay.

[DEFENSE COUNSEL]: Thank you, Your Honor.

.                    .                    .

2

[PROSECUTOR]: [J.M.T.], I'm going to show you a picture. Do you recognize who's in that picture?

[J.M.T.]: Yes, ma'am.

[PROSECUTOR]: Who is that?

[J.M.T.]: Smiles.

.               .               .

[J.M.T.]: And, yes, ma'am, that's him.

## IN-COURT IDENTIFICATION

In his second issue, Mendoza argues that J.M.T.'s in-court identification was tainted by unduly suggestive circumstances because J.M.T. "was shown only one photo of a person with long hair, this after [J.M.T.] was unable to identify [him] in court." According to Mendoza, he was harmed by this procedure because "[a]bsent the identification of the photograph, the State did not have any evidence regarding the identity of Smiles." We disagree.

Contending that the Due Process Clause is implicated here, Mendoza relies on decisions involving police-arranged identification for the proposition that J.M.T.'s in-court identification is unreliable. *See Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)(due process challenge to police use of a photographic array); *Barley v. State*, 906 S.W.2d 27 (Tex.Crim.App. 1995), *cert. denied*, 516 U.S. 1176, 116 S.Ct. 1271, 134 L.Ed.2d 217 (1996)(same). But there is no evidence in the record that law enforcement arranged an unduly suggestive photo line-up influencing J.M.T.'s in-court identification in any way. Moreover, the Supreme Court recently held that "the Due Process Clause does not require a preliminary judicial inquiry into the reliability of . . . eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement." *Perry v. New*

3

*Hampshire*, --U.S.--, 132 S. Ct. 716, 730, 181 L.Ed.2d 694 (2012).   Thus, it is questionable whether Mendoza's due process rights were even implicated by J.M.T.'s in-court identification. *But see United States v. Archibald*, 734 F.2d 938, 942-43 (2nd Cir. 1984)(concluding that an overly suggestive in-court identification by itself violates due process, but holding error was harmless in light of other strong evidence of appellant's guilt).

Even if we presume, without deciding that Mendoza's due process rights were implicated—and violated—by J.M.T.'s in-court identification, there has been no harmful error. Mendoza's identity as "Smiles" was never in issue.   During opening statements, both the State and defense counsel referred to Mendoza by that nickname or variations of it.   In addition, during trial, the State adduced evidence proving Mendoza was "Smiles."   J.M.T.'s caretaker, who was also the outcry witness, testified Mendoza was known as "Smiles" and identified him in open court, and Mendoza does not challenge this identification on appeal.   J.M.T's forensic interviewer testified that J.M.T. referred to Mendoza as "Smiles."   The grandmother of J.M.T.'s half-siblings testified that the children called the man with whom they lived "Smile" and that this man had long hair.   Indeed, when Mendoza's defense counsel cross-examined J.M.T, he informed him that he was representing "Smiley."   Given that Mendoza's identity as "Smiles" was never in doubt and that, therefore, his conviction did not rest on J.M.T.'s in-court identification, we fail to see how Mendoza was harmed by the identification procedure he alleges was constitutionally infirm.

Mendoza's second issue is overruled.

## SUFFICIENCY OF THE EVIDENCE

In his first issue, Mendoza challenges the sufficiency of the evidence on two grounds.   First, he contends the evidence is insufficient to prove he was the perpetrator.   Second, he argues

4

the evidence is insufficient to prove he had the specific intent to arouse or gratify his sexual desires when he touched J.T.M's penis and exposed his penis in J.M.T.'s presence.   We disagree.

### *Standard of Review*

The legal sufficiency standard articulated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), is the only standard a reviewing court applies in determining whether the evidence is sufficient to support a conviction.   *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex.Crim.App. 2010).   Therefore, we will review the evidence under the *Jackson* legal sufficiency standard and determine whether the evidence is sufficient to support the challenged elements beyond a reasonable doubt.   *See id.*, *citing Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789.

When reviewing the sufficiency of the evidence to support a criminal conviction, we view the evidence in the light most favorable to the verdict to determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the offense beyond a reasonable doubt.   *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007), *quoting Jackson*, 443 U.S. at 318-19, 99 S.Ct. at 2788-89.   Under a legal sufficiency review, we may not substitute our judgment for that of the jury, who is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the evidence.   *Williams v. State*, 235 S.W.3d 742, 750 (Tex.Crim.App. 2007).   We therefore defer to the jury's resolution of these issues and to its responsibility to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13, *citing Jackson*, 443 U.S. at 318-19, 99 S.Ct. at 2788-89.   In resolving what the facts are and what reasonable inferences may be drawn from them, the jury may accept one version of the facts and reject another, and it may reject any part of a witness's testimony, even

if uncontradicted. *See Margraves v. State*, 34 S.W.3d 912, 919 (Tex.Crim.App. 2000), *overruled on other grounds*, *Laster v. State*, 275 S.W.3d 512 (Tex.Crim.App. 2009); *Henderson v. State*, 29 S.W.3d 616, 623 (Tex.App.--Houston [1st Dist.] 2000, pet. ref'd).

### *Applicable Law*

"A person commits an offense if, with a child younger than 17 years . . . the person . . . engages in sexual contact with the child or causes the child to engage in sexual contact; or . . . with intent to arouse or gratify the sexual desire of any person . . . exposes . . . any part of the person's genitals, knowing the child is present . . . ."[1] TEX.PEN.CODE ANN. §§ 21.11(a)(1), (2)(A)(West 2011).

The State bears the burden of proving that the accused is the person who committed the charged offense. *See Phillips v. State*, 164 Tex.Crim. 78, 297 S.W.2d 134, 135 (Tex.Crim.App. 1957). The identity of the accused may be proved by direct or circumstantial evidence. *See Earls v. State*, 707 S.W.2d 82, 85 (Tex.Crim.App. 1986); *Martin v. State*, 246 S.W.3d 246, 261 (Tex.App.--Houston [14th Dist.] 2007, no pet.).

In a prosecution for indecency with a child, the defendant's specific intent to arouse or gratify his sexual desire can be inferred from his conduct, his remarks, and all surrounding circumstances. *Robertson v. State*, 871 S.W.2d 701, 705 (Tex.Crim.App. 1993); *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. [Panel Op.] 1981). The State is not required to introduce evidence that the defendant uttered any words expressing that intent. *C.F. v. State*, 897 S.W.2d 464, 472 (Tex.App.--El Paso 1995, no pet.).

### *Discussion*

---

[1] "Sexual contact" means any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child, if committed with the intent to arouse or gratify the sexual desire of any person. TEX.PEN.CODE ANN. § 21.11(c)(1)(West 2011).

6

Mendoza first argues the State did not prove he was the perpetrator because there was no evidence that he "was the person referred to as Smile by the children." However, when viewed in the light most favorable to the verdict, the evidence adduced at trial was sufficient to support the jury's finding that Mendoza was the perpetrator. Although J.M.T. testified that he did not see his perpetrator in the courtroom, he identified "Smiles" as his assailant. As noted above, the outcry witness and other witnesses testified that "Smiles" was the nickname by which Mendoza was known to people. In addition, even though J.M.T. did not identify Mendoza in open court, he identified "Smiles" in a photograph shown to him at trial. Furthermore, the outcry witness did identify Mendoza in open court. This evidence was sufficiently probative of Mendoza's identity as the perpetrator notwithstanding J.M.T.'s failure to point to him in open court, and J.M.T.'s failure to do so was merely a factor for the jury to consider when assessing the weight and credibility of his testimony. *See Meeks v. State*, 897 S.W.2d 950, 954-55 (Tex.App.--Fort Worth 1995, no pet.)(witness's inability to identify perpetrator in open court is merely a factor for the jury to consider when assessing the weight and credibility of the witness's testimony).

Mendoza next argues the State failed to prove he acted with the specific intent to arouse or gratify his sexual desire because J.M.T. testified that he thought Mendoza was kidding around when he exposed his penis and touched J.M.T.'s penis.[2] When viewed in the light most favorable to the verdict, the evidence adduced at trial was sufficient to support the jury's finding that Mendoza intended to arouse and gratify his sexual desire. First, there is no evidence Mendoza had a legitimate purpose in touching J.M.T.'s penis; "kidding around" does not qualify.[3]

---

[2] Mendoza does not dispute that he touched J.M.T.'s penis or that he exposed his own penis in J.M.T.'s presence.

[3] Mendoza also asserts that "[t]he combination of [J.M.T.]'s testimony that [he] was kidding around and, the existence of other individuals around that were possibly horse playing with [J.M.T.], do not support a finding that [he] touched

7

Although both J.M.T. and his mother testified that Mendoza touched J.M.T.'s penis while teaching him to urinate, J.M.T. testified that during this particular incident, Mendoza reached inside his underwear to touch him and did so in J.M.T.'s room, not the bathroom. Second, there is evidence from which the jury could have inferred Mendoza was sexually aroused when he exposed his penis to J.M.T: Mendoza's erection and his breathing. Mendoza does not offer an alternative explanation for his breathing sounds, nor does he contend that his erection was inadvertent. Instead, he points out that in both instances, there is no evidence he masturbated or asked J.M.T. to touch his penis. The lack of such evidence, however, does not conclusively establish that Mendoza did not intend to arouse or gratify his sexual desire. The jury could have rationally concluded Mendoza possessed that intent based on the manner in which he exposed his penis and touched J.M.T.'s penis and the location where he engaged in those acts.

Mendoza's first issue is overruled.

## CONCLUSION

The trial court's judgments are affirmed.


April 25, 2014

                                  YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

(Do Not Publish)

---

[J.M.T.] with the intent to arouse of gratify his sexual desire." The "other individual[]" to whom Mendoza refers is an adult friend of his named "George." On cross-examination, J.M.T. testified George was there when Mendoza assaulted him and that George picked him up and threw him on the bed. However, on redirect examination, J.M.T. testified George was not there on the day Mendoza assaulted him, but had been there previously, and, on that occasion, had thrown him on the bed in anger as a result of J.M.T.'s incessant pleas to play chess. J.M.T.'s mother verified that George had been to her home and that J.M.T. knew him. Resolving whether George was there when Mendoza assaulted J.M.T. was the jury's job, not ours, and in determining whether the evidence supports the jury's verdict, we presume that the jury resolved all conflicts in the evidence in favor of the verdict and defer to that determination. *See* Williams, 235 S.W.3d at 750; *Hooper*, 214 S.W.3d at 13.