**Johnny Ray ABBOTT, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 10–05–00312–CR.

Court of Appeals of Texas, Waco.

June 7, 2006.

Rehearing Overruled July 11, 2006.

---

**39.** *See* TEX.R.APP. P. 43.2(b).

**338**

Gary A. Udashen, Sorrels & Udashen, Dallas, for appellant.

Joe F. Grubbs, County and Dist. Atty. for Johnson County, Waxahachie, for respondent.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

BILL VANCE, Justice.

A jury convicted Johnny Abbott of indecency with a child and assessed a twenty-year prison sentence. Abbott's appeal asserts errors in both trial phases. We will affirm the judgment of conviction but will reverse the sentence and remand the case for a new punishment hearing.

### Sufficiency of the Evidence

We begin with Abbott's complaints that the evidence is legally and factually insufficient. A person commits the offense of indecency with a child "if, with a child younger than 17 years and not the person's spouse, whether the child is of the same or opposite sex, the person ... engages in sexual contact with the child or causes the child to engage in sexual contact." TEX. PEN.CODE ANN. § 21.11(a)(1) (Vernon 2003). In section 21.11, "sexual contact" means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person: (1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; ... *Id.* § 21.11(c)(1). An offense under subsection (a)(1) is a second-degree felony. *Id.* § 21.11(d).

*Standards of Review*

When reviewing a challenge to the legal sufficiency of the evidence to establish the elements of a penal offense, we must determine whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The standard is the same for both direct and circumstantial evidence cases. *Kutz-*

ner v. State, 994 S.W.2d 180, 184 (Tex. Crim.App.1999). We do not resolve any conflict of fact or assign credibility to the witnesses, as this was the function of the trier of fact. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App.1999); *Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App.1992). Instead, our duty is to determine if the findings of the trier of fact are rational by viewing all of the evidence admitted at trial in the light most favorable to the verdict. *Adelman*, 828 S.W.2d at 422. In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex.Crim.App.2000).

In a factual sufficiency review, we view all of the evidence in a neutral light and consider only whether a jury was rationally justified in finding guilt beyond a reasonable doubt. *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex.Crim.App.2004). However, there are two ways in which the evidence may be insufficient. *Id.* First, when considered by itself, evidence supporting the verdict may be too weak to support the finding of guilt beyond a reasonable doubt. *Id.* Second, there may be both evidence supporting the verdict and evidence contrary to the verdict. *Id.* Weighing all the evidence under this balancing scale, the contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard could not have been met, so the guilty verdict should not stand. *Id.* at 485. This standard acknowledges that evidence of guilt can preponderate in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt. *Id.* Stated another way, evidence supporting guilt can outweigh the contrary proof and still be factually insufficient under a beyond-a-reasonable-doubt standard. *Id.*

■ *Zuniga* also reminds us that we must defer to the jury's determination.

*See id.* at 481 (citing *Cain v. State*, 958 S.W.2d 404, 407 (Tex.Crim.App.1997)). The jury determines the credibility of the witnesses and may "believe all, some, or none of the testimony." *Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991). It is the jury that accepts or rejects reasonably equal competing theories of a case. *Goodman v. State*, 66 S.W.3d 283, 285 (Tex.Crim.App.2001). The evidence is not factually insufficient merely because the factfinder resolved conflicting views of evidence in favor of the State. *Cain*, 958 S.W.2d at 410.

*The Evidence*

In July 2004, after receiving a report that accused Abbott of indecency, Lt. Molly Dox of the Ovilla Police Department set up a videotaped interview at the children's advocacy center with the complainant, W.T., and her mother, Sharon. Abbott was later arrested and indicted.

Sharon and W.T.'s father, Randy, were divorced. Randy had remarried Janice, whose twin sister Jane is Abbott's wife. The twin sisters were close, and as a result, Randy and Janice spent much time around the Abbotts. Randy had possession of W.T. two weekends a month, and on those weekends, W.T. usually went to the Abbotts' home in Ovilla in Ellis County to visit. Sharon, the State's outcry witness, testified that W.T. told her that Abbott had touched her "privates" several times. W.T. specifically related that Abbott had been showing her how to do something on his home computer when he put his hands in her pants and rubbed her privates.

W.T., who was age nine and in the third grade at the time of trial, testified at trial that Abbott had touched her private spots more than one time, but she could specifically remember only two occasions. The first incident that she could remember

happened at his house in the computer room. When everyone else had left the room, Abbott unzipped her pants and touched her privates. W.T. sometimes called this area her "bladder," and she explained that bladder and private meant the same thing, which she identified in a picture as the female sexual organ. She said that Abbott had placed his hand inside her underwear, with the skin of his hand touching her skin.[1] When Abbott touched her, he would move his hand in a circular motion; he would not speak to her while he was touching her, and afterwards he would act as if nothing had happened. She felt sad and scared when Abbott touched her.

Lt. Dox and Sharon admitted that W.T.'s father was always with W.T. on these visits to the Abbotts when the acts occurred, but W.T. never reported anything to him or to Janice. There was no allegation that Abbott had groomed or favored W.T., that Abbott had told W.T. to keep the acts a secret, or that he had threatened to harm W.T. if she told anyone. There was no physical or medical evidence. Nor were there any eyewitnesses; W.T. said that Abbott touched her only when they were alone. W.T. never mentioned anything about Abbott's being aroused while he was *touching her.*

Sharon said that W.T. had not been exhibiting unusual or scared behavior before W.T. reported the incidents to her, and W.T. never evidenced any hesitancy to go to Abbott's home. W.T. did exhibit scared behavior after the report, but she continued to do well in school, which had not reported any behavioral problems, such as sexually acting out.

Abbott testified; he said that W.T. had been to his home many times with her father over a period of about six years. He denied ever touching her genitals. W.T. could have been in the room while he was loading photographs on the computer, but he was not alone with her. He never showed W.T. favoritism or gave her gifts, except on special occasions.

*Legal Sufficiency*

Abbott's fourth issue asserts that the evidence is legally insufficient to prove that he committed the acts with the intent to arouse and gratify his sexual desire. An essential element of the offense of indecency with a child is the intent to arouse or gratify the sexual desire of any person. *See* TEX. PEN.CODE ANN. § 21.11(a)(1), (c)(1); *Duwe v. State,* 642 S.W.2d 804, 805 (Tex.Crim.App.1982). Abbott is correct that there is no direct evidence, other than the mere touching, that he acted with the intent to arouse and gratify his sexual desire. But the requisite specific intent can be inferred from the defendant's conduct and remarks and all the surrounding circumstances. *Robertson v. State,* 871 S.W.2d 701, 705 (Tex.Crim.App.1993); *McKenzie v. State,* 617 S.W.2d 211, 216 (Tex.Crim.App. [Panel Op.] 1981); *Gottlich v. State,* 822 S.W.2d 734, 741 (Tex.App.-Fort Worth 1992, pet. ref'd) (finding requisite intent to arouse and gratify sexual desire when defendant placed his hand inside complainant's panties and played with her "private"), *abrogated on other grounds by Arevalo v. State,* 943 S.W.2d 887, 888–90 (Tex.Crim.App.1997). An oral expression of intent is not required; the conduct itself is sufficient to infer intent. *C.F. v. State,* 897 S.W.2d 464, 472 (Tex.

1. She also described a similar incident at Abbott's lake house, which was not in Ellis County. On that occasion, while others were shooting fireworks, W.T. said that she and Abbott were alone on the porch and she was reading a book when Abbott placed his hand inside her pants. Abbott testified about an occasion at his lake house when he and W.T. were on the porch and she read a book to him.

App.-El Paso 1995, no writ). Nor is there a requirement that a defendant's penis be erect. *Gregory v. State*, 56 S.W.3d 164, 171 (Tex.App.-Houston [14th Dist.] 2001, pet. denied).

Thus, the jury could infer from Abbott's conduct of touching W.T.'s genitals that it was done with the intent to arouse and gratify his sexual desire. *See Gottlich*, 822 S.W.2d at 741; *Fetterolf v. State*, 782 S.W.2d 927, 933 (Tex.App.-Houston [14th Dist.] 1989, pet. ref'd) (requisite intent to arouse and gratify sexual desire found from defendant's touching sleeping child's breast). And the evidence that Abbott committed the same conduct on other occasions is additional evidence of intent. *See Morgan v. State*, 692 S.W.2d 877, 881 (Tex.Crim.App.1985) (extraneous offense evidence that defendant had touched complainant in same manner on night before the charged offense and on previous occasions had "indubitable probative value" of defendant's intent). Adhering to our duty to view the evidence in the light most favorable to the verdict, we find that a rational trier of fact could have found beyond a reasonable doubt that Abbott touched W.T.'s genitals with the intent to arouse or gratify his sexual desire. Issue four is overruled.

*Factual Sufficiency*

■ Issue three asserts that the evidence is factually insufficient to support the jury's verdict. Abbott argues that the evidence is extremely weak because there is no evidence that typically occurs with sexual allegations, such as physical or medical evidence, eyewitnesses, and grooming. He also points to W.T.'s delay in reporting, her failure to report the incidents to her father, the absence of changes in her behavior, the absence of a hesitancy to go to Abbott's home, and his denial of the offense.

The lack of physical or medical evidence in this touching case is reasonably explainable and does not render the evidence factually insufficient. *See Murphy v. State*, 4 S.W.3d 926, 930 (Tex.App.-Waco 1999, pet. ref'd). Likewise, the absence of eyewitnesses is easily explainable; W.T. testified that the touching occurred only when no one else was around. Furthermore, a complainant's testimony alone is sufficient to support a conviction for indecency with a child. Tex.Code Crim. Proc. Ann. art. 38.07 (Vernon 2005) (requirement that victim inform another person within one year does not apply to person under 17 at time of offense); *see Garcia v. State*, 563 S.W.2d 925, 928 (Tex.Crim.App.1978). W.T. testified that Abbott committed the offense as alleged, and her mother testified about W.T.'s outcry. The jury was able to judge W.T.'s demeanor and credibility, and it was free to believe W.T. and to disbelieve Abbott's testimony.

Considering all of the evidence in a neutral light, we cannot say that the jury was not rationally justified in finding Abbott guilty. *Zuniga*, 144 S.W.3d at 484. The evidence supporting the finding of guilt, considered alone, was not too weak to support the finding beyond a reasonable doubt, and the contrary evidence was not so strong that guilt could not be proved beyond a reasonable doubt. *See id.* at 484–85. We overrule Abbott's third issue.

**Jury Selection Error**

■ In his fifth issue, Abbott asserts that the trial court erred in failing to grant a new trial after a juror revealed for the first time during trial that she knew W.T. and Sharon. Immediately after Sharon had testified, a juror informed the trial court that she recognized Sharon and that her son had gone to kindergarten with W.T. Later in the trial, the trial court questioned the juror, L.L., about it fur-

ther. L.L. stated that she did not recognize Sharon and W.T. by their names during voir dire, that before trial she had not formed an opinion on Sharon's and W.T.'s credibility, that she had not had contact with Sharon and W.T. since kindergarten (over three years ago), and that her knowledge of Sharon and W.T. would not influence her verdict.

Abbott raised this issue in his motion for new trial. L.L., who was the jury foreperson, testified at the hearing, reiterating the above and adding that she had recognized W.T. when W.T. testified, that she had no mutual friends with Sharon and that her son had no mutual friends with W.T. L.L. had not seen Sharon or W.T. in over three years, and when their children were in kindergarten together, Sharon and L.L. had not socialized and had not had contact outside of school activities. She had never spoken to Sharon or W.T., had not formed an opinion about either, and her recognition of them made no difference to her in the trial.

■■■ The Court of Criminal Appeals recently addressed a similar situation in a case in which a juror realized that the child sexual assault victim was a member in the girl scout troop of which the juror was the assistant leader and the juror's daughter was also a member. *See Franklin v. State*, 138 S.W.3d 351 (Tex.Crim. App.2004).

The Sixth Amendment guarantees the right to a trial before an impartial jury. Part of the constitutional guarantee of the right to an impartial jury includes adequate voir dire to identify unqualified jurors. And we have consistently held that essential to the Sixth Amendment guarantees of the assistance of counsel and trial before an impartial jury "is the right to question veniremembers in order to intelligently exercise peremptory challenges and challenges for cause."

In *Salazar v. State*, [562 S.W.2d 480, 482 (Tex.Crim.App.1978) ], we held that "where a juror withholds material information during the voir dire process, the parties are denied the opportunity to exercise their challenges, thus hampering their selection of a disinterested and impartial jury." We also found "[t]hat a juror will state that the fact that he withheld information will not affect his verdict is not dispositive of the issue where the information is material and therefore likely to affect the juror's verdict." The fact that the juror did not intend to intentionally withhold information "is largely irrelevant when considering the materiality of information withheld."

*Id.* at 354–55 (footnotes omitted). "Under Texas law, the defendant must show that the juror withheld material information during voir dire, and the information is withheld despite due diligence exercised by the defendant." *Id.* at 355–56. Abbott has shown jury-selection error and that he was deprived of the opportunity to exercise a peremptory strike or challenge L.L. for cause.

■■■ We thus turn to harm; we must reverse the judgment of conviction unless we determine beyond a reasonable doubt that the error in jury selection did not contribute to the conviction or punishment. Tex.R.App. P. 44.2(a); *Franklin*, 138 S.W.3d at 354. On this step, *Franklin* is dissimilar because there the trial court disallowed the defendant an opportunity to question the juror to show actual bias or prejudice, and on appeal the defendant was thus not held to that burden. *See Franklin*, 138 S.W.3d at 355–56. Because the error in jury selection was compounded by the trial court's disallowance of an opportunity to develop a record, the court found a violation of the constitutional right

to a trial by an impartial jury. *Id.* at 354–57.

Here, Abbott was able to question L.L. to show actual bias or prejudice, and the result of that questioning showed no actual bias or prejudice. *See Decker v. State,* 717 S.W.2d 903, 907 (Tex.Crim.App.1983) (acquaintance through employment was not relationship with potential for bias or prejudice); *Brown v. State,* 183 S.W.3d 728, 737–40 (Tex.App.-Houston [1st Dist.] 2005, no pet. h.) (juror's distant acquaintance with witness did not suggest bias or prejudice). The record demonstrates beyond a reasonable doubt that the error in jury selection did not contribute to Abbott's conviction or punishment. We overrule Abbott's fifth issue.

**Closing Argument**

In issues one and six, Abbott complains of prosecutorial misconduct and trial court error during closing argument at the guilt-innocence stage. In closing argument, the defense asserted that the State had not met its beyond-a-reasonable doubt burden of proof and argued that a not-guilty verdict would not endorse child molestation or condemn the victim. In rebuttal, the prosecutor responded:

> Ladies and gentlemen, don't put your head in the sand. The defense is trying to encourage you to engage in some mental gymnastics and do some flip-flops to make yourself feel better for letting a child molester go.....

> We are not here today to make ourselves feel better. We are here today to see that justice is done. And justice demands that Johnny Ray Abbott be convicted of molesting [W.T.]. That's what justice demands.

> There is no gray area here. He did it, or he didn't do it. That's the only choice here.

> *There is no gray area here. There is no notion that I believe he did it, but you didn't prove it.*

[Emphasis added].

At that point the defense objected that the prosecutor was misstating the law. The trial court overruled the objection. The prosecutor continued:

> ... And you don't want to believe a 50–something year-old man would stick his hands in the pants of a little girl.

> You don't want to believe that. I understand that. But folks, this is indecency with a child. It is what it is. *And each and every one of you told me that if the State proves all elements of our case beyond a reasonable doubt through the testimony of only one witness, you could convict someone of that crime. And that is what the State has done. We have proven each and every element of this offense.*

[Emphasis added].

■■■ Abbott's first issue complains of the following: "There is no notion that I believe he did it, but you didn't prove it." He asserts that the prosecutor's statement misstated the law on the burden of proof and undermined the presumption of innocence.

■■■ Jury argument is limited to: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answers to argument of opposing counsel; or (4) a plea for law enforcement. *Guidry v. State,* 9 S.W.3d 133, 154 (Tex.Crim.App. 1999). But even when answering opposing counsel or making a plea for law enforcement, a prosecutor cannot misstate the law. *See, e.g., Whiting v. State,* 797 S.W.2d 45, 48 (Tex.Crim.App.1990) (prosecutor misstated State's burden of proof on defensive issue).

*Zuniga* teaches that evidence of guilt can preponderate in favor of conviction but

still be insufficient to prove the elements of the crime beyond a reasonable doubt. *Zuniga*, 144 S.W.3d at 485. Thus, contrary to the prosecutor's argument, the notion exists that a jury can believe—by a preponderance of the evidence—that the defendant is guilty but the State did not prove the elements of the crime beyond a reasonable doubt, the burden of proof that must be met. We conclude that the trial court erred in overruling Abbott's objection to the prosecutor's statement. *Cf. Gore v. State*, 719 So.2d 1197, 1200 (Fla. 1998) (holding that the following prosecutor's argument misstated the burden of proof and was error: "It's simple and it comes down to this in simplicity: If you believe his story, he's not guilty. If you believe he's lying to you, he's guilty. It's that simple.").

 The law on the burden of proof is constitutional: The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires that every state criminal conviction be supported by evidence that a rational factfinder could find as sufficient to prove all the elements of the offense beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 362–64, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970); *Coit v. State*, 808 S.W.2d 473, 475 (Tex. Crim.App.1991). Although the presumption of innocence is guaranteed by a Texas statute, the statute itself arises from the constitutional guarantee of a fair and impartial trial. U.S. CONST. amend. XIV; TEX.CODE CRIM. PROC. ANN. art. 38.03 (Vernon Supp.2005); *see Miles v. State*, 154 S.W.3d 679, 680–81 (Tex.App.-Houston [14th Dist.] 2004, pet. granted). Because the error is constitutional, we must reverse the judgment of conviction unless we determine beyond a reasonable doubt that the prosecutor's and the trial court's errors did not contribute to the conviction.

TEX.R.APP. P. 44.2(a); *see Miles*, 154 S.W.3d at 681.

 In making this determination, we do not focus on the propriety of the outcome of the trial. *McCarthy v. State*, 65 S.W.3d 47, 56 (Tex.Crim.App.2001). Instead, our task is to calculate, as nearly as possible, the probable impact of the error on the jury in light of the record as a whole. *Id.* The question is whether the State has proved beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. *Satterwhite v. Texas*, 486 U.S. 249, 256–57, 108 S.Ct. 1792, 1797–98, 100 L.Ed.2d 284 (1988); *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex.Crim.App.2000). To assess harm, we consider: the source and nature of the error; the extent to which the State emphasized it; the probable collateral implications of the error; the weight a juror would probably place upon it, giving consideration to whether the record contains overwhelming evidence supporting the finding in question; and whether declaring the error harmless would encourage the State to repeat it with impunity. *Roberson v. State*, 100 S.W.3d 36, 44 (Tex.App.-Waco 2002, pet. ref'd).

The trial court overruled Abbott's objection, but the prosecutor was the source of the improper comment, which misstated a basic tenet of criminal law—the State's burden of proof of beyond a reasonable doubt. Because the prosecutor made the comment only once, he did not emphasize the error. Rather, just a few sentences later in the argument, the prosecutor emphasized that the State had met the beyond-a-reasonable-doubt burden of proof.

The probable collateral implication to be drawn from the comment was that the jury could convict Abbott if it believed W.T. and disbelieved Abbott, regardless of whether the State proved all the elements of the criminal offense beyond a reasonable

doubt. However, the comment could also have been reasonably construed as a comment on the credibility of the witnesses.

While this case does not present "overwhelming evidence" of guilt, we have held above that the evidence is legally and factually sufficient. The jury was properly instructed in the jury charge on the burden of proof beyond a reasonable doubt, and we presume the jury followed the trial court's instructions. *Resendiz v. State,* 112 S.W.3d 541, 546 (Tex.Crim.App.2003); *Miles,* 154 S.W.3d at 682–83. Abbott presents no evidence to rebut this presumption. *See Colburn v. State,* 966 S.W.2d 511, 520 (Tex.Crim.App.1998) (appellant pointed to no evidence to rebut presumption that jury followed instructions and did not file motion for new trial alleging juror misconduct or obtain hearing to adduce facts not in record). Because the jury was told of the correct burden of proof literally dozens of times throughout voir dire, closing argument, and the jury charge, we cannot say that the jury placed undue weight on one misstatement of the law.

Finally, we examine whether declaring the prosecutor's misstatement of the law harmless will encourage the State to repeat it with impunity. We conclude that it will not. The misstatement here appears to have been inadvertent; the prosecutor did not repeat it and soon thereafter referred to the correct burden of proof. In conclusion, we find beyond a reasonable doubt that the error did not contribute to Abbott's conviction. *See* Tex.R.App. P. 44.2(a); *cf. Miles,* 154 S.W.3d at 682–83. Accordingly, we overrule Abbott's first issue.

■ The sixth issue complains about the prosecutor's argument that the State did "not have to prove why [Abbott] did what he did" and that the trial court erred in overruling his objection. Abbott argues that this statement eliminated the element

of intent to gratify sexual desire. In complete context, the prosecutor argued:

> I also want to explain to you the language that sexual contact means touching of any part of the genitals of another person with intent to arouse or gratify the sexual desire of any person. Intent can be inferred from the facts and circumstances.
>
> . . .
>
> And that's the case in this case. Why else is a man going to touch a little girl's genitals? For his jollies, that's why. And the facts and the circumstances allow you to infer that intent.
>
> *Now, though that may be his intent for his sexual gratification and you can infer that, the State does not have to prove why a man would do that because that, frankly, is one of the great mysteries of the universe. Why would a man do something like that to a little girl? We don't know. And we don't have to know. We only have to know that he did.*
>
> . . .
>
> *We do not have to prove why he did what he did.* But I submit to you that if they are going to sit up here before you and call a little girl a liar, say she fabricated this story, why would she do that? They better provide you with a legitimate motive for a little girl to subject herself to this.
>
> [DEFENSE COUNSEL]: Object, Your Honor. That's improperly shifting the burden.
>
> THE COURT: Overruled.

[Emphases added.]

■ The State responds that Abbott has not preserved this complaint for appeal. A complaint on appeal must comport with the objection made in the trial court to preserve it for appellate review. *See Broxton v. State,* 909 S.W.2d 912, 918 (Tex.

Crim.App.1995); *Rezac v. State*, 782 S.W.2d 869, 870 (Tex.Crim.App.1990). It is clear that trial counsel objected only to the prosecutor's statement that the defense should provide a motive for W.T.'s allegation. Thus, Abbott did not preserve the complaint in his sixth issue.[2] We overrule Abbott's sixth issue.

### Discovery of Victim's Videotaped Interview

 In issue eight, Abbott asserts that the trial court abused its discretion in denying his request to inspect or copy W.T.'s videotaped interview before trial. W.T. testified at trial, and the State did not offer the videotape into evidence.

 A defendant does not have a general right to discovery of evidence in the State's possession. *Quinones v. State*, 592 S.W.2d 933, 940 (Tex.Crim.App.1980); *see* TEX.CODE CRIM. PROC. ANN. art. 39.14 (Vernon Supp.2005). A defendant's right to discovery is limited to exculpatory or mitigating evidence. *Dickens v. Court of Appeals, Second Supreme Jud. Dist. of Tex.*, 727 S.W.2d 542, 551 (Tex.Crim.App. 1987). Beyond that, the scope of discovery is within the trial court's discretion. *Quinones*, 592 S.W.2d at 940; TEX.CODE CRIM. PROC. ANN. art. 39.14. Because there is no showing or argument that the videotape contains exculpatory evidence and the videotape is not part of the record (it was not offered at trial), we cannot say that the trial court abused its discretion in denying Abbott discovery of the videotape. *See Dickens*, 727 S.W.2d at 544. Issue eight is overruled.

### Mistrial

 Abbott also testified in the punishment phase, denying that he had committed the offense and saying that he had no prior felony or misdemeanor convictions. On cross-examination, the following exchange occurred:

Q: Who is [S.B.]?

A: My stepdaughter.

[DEFENSE COUNSEL]: Your Honor—

Q: Has [S.B.] accused you of molesting—

[DEFENSE COUNSEL]: Your Honor, may we approach the bench?

THE COURT: Yes.

Outside the jury's presence, the trial court was informed that S.B. had accused Abbott of molesting her, that she had recanted at one time, and that the prosecutor had her written statement but that she was not present to testify. While the jury was still not present, the trial court allowed the prosecutor to ask Abbott if he had in fact molested S.B., and Abbott answered that he did not molest her. The court ruled that, because S.B. was not going to testify that Abbott had molested her, the prosecutor's questions about S.B. could not be asked in the presence of the jury merely to place the accusation before the jury and get a denial from Abbott.

Abbott requested a jury instruction to disregard. The trial court agreed to, stating:

Ladies and gentlemen, the prosecutor began to ask a question before you were sent out of the courtroom which an objection was made [to], and they approached the bench.

And most of the question was unintelligible to me, but the jurors may have

---

2. We would find that the State was not arguing that it did not have to prove specific intent to arouse or gratify sexual desire. Plainly, the State was merely stating that it did not have to prove why a grown man would be sexually aroused or gratified by touching a little girl's genitals.

heard part or all of the question propounded at the time. And the Court is ruling that you are not to consider the question that you may have heard, the last question you may have heard from the prosecutor, for any purpose whatsoever. Disregard it completely.

▪▪▪ Abbott moved for a mistrial, which the trial court overruled. In his second issue, Abbott complains that the trial court abused its discretion in failing to grant a mistrial. The denial of a motion for mistrial, which is appropriate for "highly prejudicial and incurable errors," is reviewed under an abuse of discretion standard. *See Simpson v. State,* 119 S.W.3d 262, 272 (Tex.Crim.App.2003) (quoting *Wood v. State,* 18 S.W.3d 642, 648 (Tex. Crim.App.2000)); *Ladd v. State,* 3 S.W.3d 547, 567 (Tex.Crim.App.1999).

> [T]he question of whether a mistrial should have been granted involves most, if not all, of the same considerations that attend a harm analysis. A mistrial is the trial court's remedy for improper conduct that is "so prejudicial that expenditure of further time and expense would be wasteful and futile." In effect, the trial court conducts an appellate function: determining whether improper conduct is so harmful that the case must be redone. Of course, the harm analysis is conducted in light of the trial court's curative instruction. Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required.

*Hawkins v. State,* 135 S.W.3d 72, 77 (Tex. Crim.App.2004). Thus, the appropriate test for evaluating whether the trial court abused its discretion in overruling a mo-

tion for mistrial is a tailored version of the test originally set out in *Mosley v. State,* 983 S.W.2d 249, 259–60 (Tex.Crim.App. 1998), a harm analysis case. *See Hawkins,* 135 S.W.3d at 77. The *Mosley* factors that we consider in determining whether the trial court abused its discretion in denying a mistrial during the punishment phase are: (1) the prejudicial effect, (2) curative measures, and (3) the likelihood of the same punishment being assessed. *Hawkins,* 135 S.W.3d at 77; *see Mosley,* 983 S.W.2d at 259.

▪▪▪ In the punishment phase, the State may introduce evidence of an "extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act." TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon Supp.2005). Before admitting extraneous-offense evidence in the punishment phase, the trial court must initially determine that a jury could find beyond a reasonable doubt that the defendant committed the extraneous offense.[3] *Huizar v. State,* 12 S.W.3d 479, 484 (Tex.Crim.App. 2000); *see also Ex parte Varelas,* 45 S.W.3d 627, 631 (Tex.Crim.App.2001); *Mitchell v. State,* 931 S.W.2d 950, 954 (Tex.Crim.App.1996) (plurality).

At the hearing on Abbott's motion for new trial, the prosecutor and S.B. testified. Their testimony, along with the discussions and arguments made during trial outside

---

**3.** The State suggests that the prosecutor's attempt to obtain a judicial admission from Abbott that he had molested his stepdaughter is no different than obtaining a judicial admission from a defendant that he is the same person previously convicted. *See Laday v. State,* 685 S.W.2d 651, 652 (Tex.Crim.App.

1985). The difference, of course, is that in those situations, the prosecutor has (or should have) an admissible pen packet that proves the prior conviction beyond a reasonable doubt, while in this case the prosecutor admittedly had no admissible evidence to prove the extraneous offense.

the presence of the jury, leads us to conclude the following:

- The prosecutor had spoken to S.B. about her accusation that Abbott had molested her.
- The prosecutor knew that S.B. had recanted the accusation at one time.
- The prosecutor knew that if S.B. testified in the punishment phase, S.B. could be impeached with her recantation.
- The prosecutor did not subpoena S.B. or ask her to appear and testify voluntarily.
- Knowing that S.B. was not going to be testifying, the prosecutor asked Abbott if S.B. had accused him of molesting her.
- The prosecutor knew or should have known that, if the trial court allowed him to ask Abbott if S.B. had accused him of molestation and Abbott denied it, S.B. would not be available to be impeached with her recantation.

Two other matters are noteworthy. First, during jury deliberations on guilt-innocence, the jury sent a note asking if they could find out if Abbott had any prior convictions, to which the trial court replied that the jury was to consider only the evidence that had been submitted. Second, during punishment-phase argument, the prosecutor asked the jury to assess the maximum twenty-year sentence but no fine, which is exactly what the jury did.

*Prejudicial effect.* Applying the *Hawkins/Mosley* factors, we first observe that the prosecutor's question—without S.B. present to testify—appears to have been calculated to inflame the minds of the jury. The intent appears to have been to inform the jury, without admissible evidence, that Abbott had previously been accused of child molestation. This flagrancy compounds the obvious prejudicial effect of the question in this case. *See Roberson,* 100 S.W.3d at 40–44 (flagrancy and persistence compounds prejudicial effect). With the jury just having found Abbott guilty of indecency with a child, we cannot conceive of information that would be more prejudicial than the improper suggestion that he may have molested his stepdaughter.[4]

 *Curative measures.* In most instances, an instruction to disregard will cure the prejudicial effect. *Wesbrook v. State,* 29 S.W.3d 103, 115–16 (Tex.Crim. App.2000). An instruction to disregard is presumptively inadequate only in the most blatant cases; only offensive or flagrantly improper conduct warrants reversal when there has been an instruction to disregard. *Wilkerson v. State,* 881 S.W.2d 321, 327 (Tex.Crim.App.1994); *Roberson,* 100 S.W.3d at 41. In other words, an instruction to disregard will be presumed effective unless the facts of the case suggest the impossibility of removing the impression produced on the minds of the jury. *Waldo v. State,* 746 S.W.2d 750, 754 (Tex. Crim.App.1988); *Veteto v. State,* 8 S.W.3d 805, 811 (Tex.App.-Waco 2000, pet. ref'd). The effectiveness of a curative instruction is determined on a case-by-case basis. *Veteto,* 8 S.W.3d at 811.[5] The trial court's

---

4. The State appears to suggest that, because the trial court did not hear the entire question due to defense counsel's interjection during the prosecutor's question, perhaps the jury did not hear it either. Before the jury returned, the trial court had the court reporter read back the question, "Has [S.B.] accused you of molesting—." While the question was not completed, the prejudicial words had been spoken, and because the court reporter heard them, we assume that the jury did as well.

5. We have determined that we will gauge the effectiveness of an instruction to disregard by considering the following factors: (1) the nature of the error; (2) the persistence of the prosecutor; (3) the flagrancy of the violation;

instruction in this case was adequate (*cf. Veteto*, 8 S.W.3d at 812), but the severity of the prejudicial effect leads us to conclude that the instruction could not remove from the jurors' minds the impression that the question was designed to create—that Abbott was a repeat offender.[6]

*Likelihood of the same punishment being assessed.* Finally, we consider the likelihood of the same punishment being assessed and the harm to Abbott as measured by the severity of his sentence. Abbott testified in this vigorously contested case, and we know that during guilt-innocence the jury wanted to know if Abbott had committed similar offenses. Despite his having no prior convictions and there being no other punishment evidence of extraneous offenses or bad acts, Abbott received the maximum prison sentence of twenty years, as the prosecutor had requested. We believe that it is highly unlikely that, but for the prosecutor's question suggesting Abbott's molestation of his stepdaughter, the jury would have assessed the maximum twenty-year sentence. The severity of Abbott's sentence strongly suggests that the trial court's instruction did not cure the error and that Abbott was harmed by the improper question.

We conclude that the trial court abused its discretion in denying the mistrial motion. We sustain Abbott's second issue and will reverse and remand the case for a new punishment hearing. Because we are remanding for a new punishment hearing, we need not address Abbott's seventh issue, which complains that the twenty-year sentence is cruel and unusual because it is grossly disproportionate to the offense.

## Cumulative Error

Issue nine asserts that cumulative error denied Abbott a fair trial. *See Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim.App.1999) ("It is conceivable that a number of errors may be found harmful in their cumulative effect."). We have found three errors, two that are harmless and the other warranting a new punishment hearing. Cumulative error is not present, and issue nine is overruled.

## Conclusion

We affirm the judgment of conviction. We reverse that portion of the judgment assessing punishment of a twenty-year sentence and remand this cause to the trial court for a new punishment hearing. TEX. CODE CRIM. PROC. ANN. art. 44.29(b) (Vernon Supp.2005).

Chief Justice GRAY concurring and dissenting.

Chief Justice GRAY concurs and dissents, noting he would affirm the trial court's judgment in its entirety. While there are a number of statement's in the

---

(4) the particular instruction given; (5) the weight of the incriminating evidence; and (6) the harm to the accused as measured by the severity of the sentence. *Roberson*, 100 S.W.3d at 41. We will incorporate these factors, as applicable to punishment-phase error, into our *Hawkins/Mosley* analysis.

6. "It is better to follow the rules than to try to undo what has been done. Otherwise stated, one cannot 'unring a bell'; 'after the thrust of the saber it is difficult to say forget the wound'; and finally 'if you throw a skunk into the jury box, you can't instruct the jury not to smell it.'" *Walker v. State*, 610 S.W.2d 481, 486 n. 6 (Tex.Crim.App. [Panel Op.] 1980) (quoting *Dunn v. United States*, 307 F.2d 883, 886 (5th Cir.1962)); *see also Bruton v. United States*, 391 U.S. 123, 129, 88 S.Ct. 1620, 1624, 20 L.Ed.2d 476 (1968) ("The naive assumption that prejudicial effects can be overcome by instructions to the jury ... all practicing lawyers know to be unmitigated fiction.") (citing *Krulewitch v. United States*, 336 U.S. 440, 453, 69 S.Ct. 716, 723, 93 L.Ed. 790 (1949) (Jackson, J., concurring)).

opinion that I cannot join, I concur in affirming the trial court's judgment of conviction. I cannot, however, find error in the trial court's denial of the motion for mistrial based upon what was before the trial court at the time of the ruling, which of necessity must disregard the evidence obtained at the motion for new trial hearing. Further, the evidence from that hearing, only a summary of which is presented, does not convince me, like it has the majority, that the prosecutor had *no* basis for asking the question that, from this record, it is doubtful that the jury ever heard. I also note that there is no issue arguing error in the denial of the motion for new trial.