

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-09-00395-CR

**JOHNNY HOLLIS KING,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

_____

### From the 13th District Court
### Navarro County, Texas
### Trial Court No. 32383-CR

---

## MEMORANDUM  OPINION

---

Johnny Hollis King appeals from his conviction for ten separate counts of indecency with a child by contact.  TEX. PEN. CODE ANN. § 21.11 (Vernon 2003).  Based on pleas of true to two enhancement paragraphs and the jury's verdict on punishment, he was sentenced to imprisonment for fifty (50) years in the Texas Department of Criminal Justice – Institutional Division for each count, to be served consecutively.  King complains that the evidence was both legally and factually insufficient to sustain his conviction, that the trial court abused its discretion in the admission of testimony of a witness, that the trial court abused its discretion by discharging a juror during the

trial, and that the jury charge was erroneous. Because we find no reversible error, we affirm the judgments of the trial court.

*Legal and Factual Sufficiency*

King complains that the evidence was both legally and factually insufficient for the jury to have found that he: (1) touched M.K.; (2) touched M.K. on the breast and genitals on any one occasion; (3) touched M.K. on ten separate occasions in 2008; (4) touched M.K. with the required intent.

*Standard of Review*

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Furthermore, we must consider all the evidence admitted at trial, even improperly admitted evidence, when performing a legal sufficiency review. *Clayton*, 235 S.W.3d at 778; *Moff v. State*, 131 S.W.3d 485, 489-90 (Tex. Crim. App. 2004). The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing an actor's guilt. *Clayton*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim.

App. 2006).  We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder's determination is manifestly unjust.  *Steadman*, 280 S.W.3d at 246; *Watson*, 204 S.W.3d at 414-15, 417.  Unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the fact-finder's determinations, "particularly those determinations concerning the weight and credibility of the evidence."  *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); *see Steadman*, 280 S.W.3d at 246.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that we "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Watson*, 204 S.W.3d at 417.  We may not simply substitute our judgment for the fact-finder's.  *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8.  A factual sufficiency review of circumstantial evidence is the same as a review of direct evidence.  *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000); *Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999) (reasoning that "[c]ircumstantial evidence, by itself, may be enough to support the jury's verdict").

*The Facts*

King and Mary, a pseudonym for M.K.'s mother, had been together on and off for approximately fifteen years. Mary's two younger daughters, M.K. and O.K., shared a twin bed in a bedroom in Mary's home that did not have a door on it. King would spend several nights a week at this residence between 2007 and early 2009, when he was arrested for these offenses.

M.K. was fourteen years old at the time of trial. She testified that during the relevant time periods, she would sleep on the outside of the bed and her sister, O.K., would sleep next to the wall. M.K. testified that "really every night unless he wasn't there," King would come into her room and touch her on the breast and/or genital area through her clothing. She would act like she was waking up when King did this, and he would "act like he was telling me to go to the restroom or getting a dirty dish or something that was sitting around." She testified that this began when she was eleven or twelve years old and continued until the end of 2008.

M.K. testified that one day in late 2008, King called her while she was out with some friends and as part of the conversation told her not to wear panties when she went to bed that night. Additionally, when they all got home, King said it to her again. Later that evening, M.K., Mary, and O.K. left the residence, and while they were gone, M.K. told Mary what King had told her and begged her mother not to go to sleep that night. They went back to their residence and played games until very early the next morning. When King went to the restroom, M.K., O.K., and Mary snuck out of the residence and went to a relative's home.

A few days later, M.K. was interviewed at the local child advocacy center and gave the same version of events. She attended therapy and told the therapist that King

had been touching her for a long time. Additionally, M.K. had told her mother one time previously that King had touched her inappropriately, but King told Mary that he was just checking to see if M.K. had wet the bed. M.K. had a problem with bedwetting during the times that King resided with them, but apparently did not when he was out of the home.

At trial, M.K. described an event that took place in her home when she got in trouble for a note that she was accused of passing at school. She testified that King threatened to give her thirty licks if she did not remove her shorts and underwear and lay on a bed with her legs spread open, so she did so, although she fought him. King told her he needed to check to see if she was messing around with boys and touched her genital area "skin to skin." Additionally, at another time, M.K. testified to seeing King lying on top of O.K. in her mother's bed with one leg on the bed and one on the floor. When he saw M.K., he got off of O.K. and acted as though he was looking for shoes. She had come into the room because she heard the bed "moving real quick against the headboard against the wall." She had woken up one night to see King touch her sister on the buttocks, and moved closer to O.K. to protect her from King. O.K. denied any inappropriate behavior when she was interviewed at the child advocacy center. M.K. further described an instance one night when King came into her room she saw his penis halfway out of his underwear next to her head but did not know if it was erect or not. At some point, King told M.K. he would f--- her up if she told anyone.

King testified on his own behalf and denied that he had ever touched M.K. in any manner while she was sleeping. He stated that he did go into the girls' room at night to turn off the television or radio, to get dirty dishes out of the room, or to tell

M.K. that she needed to get up to go to the bathroom.  King had been to prison six times and had a history of drug dealing and weapons violations.  He was involved with three women while he was living with Mary.  King believed that M.K. had made up the allegations at Mary's urging because her mother was upset that he was involved with other women.

The forensic interviewer from the children's advocacy center and M.K.'s therapist both testified regarding M.K.'s outcry and description of what King did to her.  The forensic examiner testified that M.K. did not appear to have been coached by anyone.  The therapist stated that she believed that M.K. was not faking.

King's first claim is that the evidence was both legally and factually insufficient for the jury to have found that he committed the offenses at all.  There was no physical evidence of any offense and the only witness to the occurrences was M.K. herself, and King denies touching her entirely.  However, the testimony of a child victim is sufficient to support a conviction for indecency with a child.  *Martinez v. State*, 178 S.W.3d 806, 814 (Tex. Crim. App. 2005).  Further, it is the responsibility of the jury to determine the credibility and weight of the witnesses' testimony, as we are unable to observe the demeanor and credibility of the witnesses from a cold record.  *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000).

King next complains that the evidence was legally and factually insufficient for the jury to have determined that he touched both M.K.'s breast and genitals on the same occasion.  However, M.K.'s testimony was that he touched her on both her breast and her genitals pretty much every night that he was at their house.  The forensic examiner

from the child advocacy center testified that M.K. stated that King touched her on both her breast and genitals with his hand almost nightly.

King also complains that the evidence was legally and factually insufficient for the jury to have determined that he touched M.K. on ten separate occasions in 2008 because M.K. was not able to conclusively establish that King touched her in 2008, but had stated that it began when she was 11 or 12, which would have been in 2007. M.K. was unable to give exact dates of the touching incidents, but testified that they occurred pretty much every night that King spent the night at their home. Mary testified that King spent the night at her house at least four nights a week from May of 2008 through his arrest for this offense in early 2009. King does not argue that the evidence was insufficient for the jury to have found that he committed the offenses on the specific dates as alleged in the indictments, but that it was insufficient for the jury to have found that he committed the offenses in 2008. Additionally, King did not dispute the fact that he resided in Mary's residence fairly regularly in 2008.

King's final contention is that the evidence was legally and factually insufficient for the jury to have found that he committed the offenses with the intent to arouse or gratify his sexual desire. TEX. PEN. CODE ANN. § 21.11(c) (Vernon 2003). "The requisite specific intent to arouse or gratify can be inferred from the defendant's conduct and remarks and all the surrounding circumstances." *Villanueva v. State*, 209 S.W.3d 239, 246 (Tex. App.—Waco 2006, no pet.); *accord Abbott v. State*, 196 S.W.3d 334, 340 (Tex. App.—Waco 2006, pet. ref'd); *see Cunningham v. State*, 726 S.W.2d 151, 154 (Tex. Crim. App. 1987). The jury can infer intent to arouse or gratify sexual desire from King's act of touching the child's genitals. *Abbott*, 196 S.W.3d at 340.

We find that the jury could infer from King's conduct of touching M.K.'s breasts and genitals that it was done with the intent to arouse and gratify his sexual desire. *See Abbott*, 196 S.W.3d at 341; *Fetterolf v. State*, 782 S.W.2d 927, 933 (Tex. App.—Houston [14th Dist.] 1989, pet. ref'd) (requisite intent to arouse and gratify sexual desire found from defendant's touching sleeping child's breast). The evidence that King committed the same conduct on other occasions is additional evidence of intent. *See Morgan v. State*, 692 S.W.2d 877, 881 (Tex. Crim. App. 1985) (evidence that defendant had touched complainant in same manner on the night before the charged offense and on previous occasions had "indubitable probative value" of defendant's intent).

We find that by viewing all of the evidence in the light most favorable to the verdict that the jury could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Therefore, the evidence was legally sufficient. We overrule issue one.

Further, when we view the evidence in a neutral light, favoring neither party, we cannot find that the evidence was so weak that the jury's determination is clearly wrong and manifestly unjust or that conflicting evidence so greatly outweighs the evidence supporting the conviction that the jury's determination is manifestly unjust. *Steadman*, 280 S.W.3d at 246; *Watson*, 204 S.W.3d at 414-15, 417. Therefore, the evidence was also factually sufficient. We overrule issue two.

*Admission of Evidence*

King complains that the trial court abused its discretion in allowing an expert witness to testify as to M.K.'s credibility and in denying a motion for mistrial because

that testimony had the effect of replacing the jury as the fact-finder. We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 390-91 (Tex. Crim. App. 1990) (op. on reh'g) ("as long as the trial court's decision was within the zone of reasonable disagreement and was correct under any theory of law applicable to the case, it must be upheld").

King complains of several different segments of testimony given by M.K.'s therapist that he contends violated Rule 704 of the Rules of Evidence. Rule 704 states that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." TEX. R. EVID. 704. King contends that in certain segments of her testimony, the therapist improperly gave the opinion that M.K. was truthful in her allegations, that she stated that sexual abuse had in fact occurred, and that she referred to King inappropriately as the "perpetrator."

King first complains about the following question asked by the State: "I believe you mentioned trauma, that you believed she had experienced some trauma. How did you know that?" King objected to the question and the objection was sustained. However, King did not request a limiting instruction or seek any further relief from the trial court. The second question King complains about is the following question by the State: "What do you believe she was not faking about?" King objected, but no ruling was made by the trial court because the State offered to rephrase the question. In order to preserve error, the party asserting an objection must pursue the matter to the point of receiving an adverse ruling from the trial court. *Tucker v. State*, 990 S.W.2d 261, 262 (Tex. Crim. App. 1999). The proper method of pursuing an objection to an adverse

ruling has three parts. They are: (1) object and, if the objection is sustained; (2) request an instruction to disregard and, if granted; (3) move for a mistrial. *Fuller v. State*, 827 S.W.2d 919, 926 (Tex. Crim. App. 1992).

King also complains of an answer given by the therapist in response to questions from the State regarding her diagnosis of sexual abuse of a child relating to M.K. The State asked the therapist: "What things did you see in your sessions that you felt justified in putting that label on her, so to speak?" The therapist responded: "The only way that that can be diagnosed is if that's the presenting problem for the child. And for [M.K.] that was the only reason I was seeing her is because there was sexual abuse." King objected, and the trial court sustained the objection and gave an instruction to the jury to disregard the last part of the answer. King's motion for mistrial was denied.

Additionally, King complains of an answer given in response to a question regarding M.K.'s progress in counseling where the therapist stated: "I feel like [M.K.] was able to continue to move forward because she has such a strong family background and support. I also believe because the person that perpetrated this abuse was no longer in her home." King objected, and the trial court sustained the objection and gave an instruction to the jury to disregard the last part of the answer. King's motion for mistrial based on the statement and the testimony as a whole was denied.

The next question from the State was whether M.K. had identified "the perpetrator, the person that she said came in and touched her," which was answered affirmatively. The State then asked, "And were you aware that the perpetrator was out of the home?" This was also answered affirmatively. King then objected on the basis of rule 704. The trial court overruled King's objections. In order to preserve error, an

objection should be made as soon as the ground for objection becomes apparent. *Lagrone v. State*, 942 S.W.2d 602, 618 (Tex. Crim. App. 1997). Generally, this occurs when the evidence is admitted. *Dinkins v. State*, 894 S.W.2d 330, 355 (Tex. Crim. App. 1995). If a party fails to object until after an objectionable question has been asked and answered, and he can show no legitimate reason to justify the delay, his objection is untimely and error is waived. *Id.* In this instance, King waited until after both objectionable questions had been asked and answered. King has provided no reason to justify his delay in objecting.

The two properly preserved objections to the testimony of M.K.'s therapist are based on the trial court's purported abuse of discretion in failing to grant King's motion for mistrial, which was the only adverse ruling made by the trial court against King in each instance. Mistrial is appropriate for only "highly prejudicial and incurable errors," and "may be used to end trial proceedings when faced with error so prejudicial that 'expenditure of further time and expense would be wasteful and futile.'" *Hawkins v. State*, 135 S.W.3d 72, 76-77 (Tex. Crim. App. 2004); *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003) (*quoting Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000)).

The trial court promptly instructed the jury to disregard the objected-to testimony both times when requested as described above. *See Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000) ("Ordinarily, a prompt instruction to disregard will cure error associated with an improper question and answer."). When a trial court instructs a jury to disregard certain testimony, we presume that the jury follows the trial court's instructions. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999); *cf. Wood*, 18 S.W.3d

at 648 (noting that a trial court is required to grant a motion for mistrial only when the improper question is "clearly so prejudicial to the defendant and is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors."). After reviewing the record, we cannot conclude that the jury did not follow the trial court's instructions to disregard the witness's references. This is especially true in light of the fact that during the re-direct examination by the State, the therapist testified without objection that M.K. did not appear to be malingering or lying about what she had told the therapist without objection by King. M.K. had clearly identified King as the person who had touched her. Additionally, we have determined that the other objection to the use of the term "perpetrator" referring to King was not timely and was waived. We find that the trial court did not abuse its discretion in denying either of the above motions for mistrial.

King further contends that the trial court abused its discretion by not striking the therapist's testimony in its entirety because of the cumulative nature of the errors. In this regard, King presents no authority to support his argument that the testimony should have been stricken in its entirety. Citation to authorities is required in order to properly present an issue to this Court. TEX. R. APP. P. 38.1. This portion of his issue is inadequately briefed and is therefore, waived. *See* TEX. R. APP. P. 38.1(h). We overrule issue three.

*Removal of Juror*

King complains that the trial court erred by removing a juror during the trial, which resulted in a verdict by only eleven jurors. King contends that the juror was not disabled, and therefore the trial court abused its discretion in removing the twelfth

juror. During voir dire, Kamia Davis admitted to knowing King, M.K., and Mary, but only on an informal basis. Davis affirmed that she could be impartial if selected as a juror. Davis was impaneled as a juror.

On the first day of testimony, the State presented a witness who testified outside of the presence of the jury that he knew both King and Davis, and had smoked marijuana with them on two occasions approximately one year prior to the trial. There were five or six persons present each time. The trial court questioned Davis *in camera* and Davis denied smoking marijuana with King and stood by her answers given during voir dire. The trial court took no further action at that time.

The next day, the State presented two more witnesses, who were questioned by the trial court as to the relationship between King and Davis. The first witness, worked with another prospective juror who had told her about Davis's denial of a relationship with King. The witness testified that she had personally seen King and Davis together under a tree, which was a local gathering spot for smoking and drinking in a group of 15-20 people, although she did not know if King and Davis had a conversation or were together. The witness stated that she observed them at the tree "just virtually daily" before King was arrested for these offenses.

The prospective juror who had spoken with the first witness about Davis and King had never met King, but had heard of him as she lived in the same town as he did. At a break, the prospective juror asked Davis if she knew King, and Davis said that she did know him, that he was Mary's John. Davis told the prospective juror that King's current girlfriend, Shae, had approached Davis and told her, "Don't find my baby

guilty." Davis told the prospective juror that she had kept walking like she did not hear Shae's comment.

Davis and the prospective juror went to lunch together on a break during voir dire. Davis told the prospective juror that she knew him more than what she was letting the trial court know. Davis told her that one day King had stalked a little girl who was about twelve years old, which was reported by the child's father to the sheriff's department. Although King could not be arrested, he was told he could not be in a school zone. Davis also told the prospective juror that King had told her that he had gone to another city and slept with another girl and that the little girl he had slept with was his biological child. The prospective juror stated that Davis told her that King had personally said that he had done that, and that it wasn't something she had heard from someone else. The prospective juror did not know King, nor had she been around the tree. During voir dire, this prospective juror had stated that she did not feel that she could be impartial because of the rumors she had heard about King.

The trial court found that Davis was disabled because of bias, and discharged her from the jury. King objected to the dismissal but did not request a mistrial. Based upon our review of the record, we hold that the trial court did not abuse its discretion by determining that juror Davis was disabled as that term is used in Article 36.29. We overrule issue four.

*Jury Charge Error*

King complains that the trial court erred in the submission of the application paragraph of the charge because it improperly set forth the mens rea required for conviction in that it allowed the jury to convict him of indecency with a child for

"intentionally or knowingly" engaging in sexual contact with M.K., although the proper mens rea for the offense is the specific intent "to arouse or gratify the sexual desire of any person." TEX. PEN. CODE ANN. § 21.11(c) (Vernon Supp. 2009).

*Standard of Review*

It is undisputed that King did not object to the charge on this basis. Because there was no objection made to the charge by King, we must first determine whether the charge as submitted to the jury was erroneous and if so, we must then analyze this complaint utilizing the standard of *Almanza v. State*. *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008) (*citing Olivas v. State*, 202 S.W.3d 137, 143-44 (Tex. Crim. App. 2006), *citing Almanza*, 686 S.W.2d 157 (Tex. Crim. App. 1985)). Under *Almanza*, unobjected-to jury charge error will not result in reversal of a conviction in the absence of "egregious harm." *Almanza*, 686 S.W.2d at 171.

In examining the record for egregious harm, we consider the entire jury charge, the state of the evidence, the final arguments of the parties, and any other relevant information revealed by the record of the trial as a whole. *Olivas*, 202 S.W.3d at 144. Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007); *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006).

*Applicable Statutes*

The elements of indecency with a child are that the accused (1) engaged in "sexual contact," (2) with a child, (3) younger than seventeen years of age, (4) whether the child is of the same or opposite sex. *See id*. § 21.11(a)(1). "Sexual contact" means the

following acts, if committed with the intent to arouse or gratify the sexual desire of any person: (1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or (2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person. *Id*. § 21.11(c).

*Analysis*

In this case, the abstract portion of the jury charge provided: "Our law provides that a person commits an offense if, with a child younger than 17 years old and not his spouse, whether the child is the same or opposite sex, he engages in sexual contact with the child." It also defined "sexual contact" as "any touching of any part of the genitals or breasts of another person with intent to arouse or gratify the sexual desire of any person." Although the abstract portion of the charge did not use the terms "intentionally" or "knowingly" in defining the applicable substantive law, it included full statutory definitions of "intentionally" and "knowingly."

The application portion of the jury charge allowed the jury to convict King of indecency with a child if it found beyond a reasonable doubt that "with the intent to arouse or gratify [his] sexual desire, [he] . . . intentionally or knowingly engage[d] in sexual contact with M.K. by touching her breasts and genitals" on ten separate dates, each constituting a separate offense.

Because the application paragraph disjunctively listed the culpable mental states of "intentionally" and "knowingly" with the specific intent necessary to complete the offense, the jury could have convicted King without consideration of whether he acted with the proper mens rea required by the statute, which constitutes charge error.

*Bazanes v. State*, 310 S.W.3d 32, 37 (Tex. App.—Fort Worth 2010, pet. ref'd); *see Jones v. State*, 229 S.W.3d 489, 492 (Tex. App.—Texarkana 2007, no pet.) (finding error when charge "stated that indecency with a child is committed if the person intentionally or knowingly engages in sexual contact with a child"); *see also Rodriguez v. State*, 24 S.W.3d 499, 502 (Tex. App.—Corpus Christi 2000, pet. ref'd). Therefore, we will review the record to determine whether this error could have caused egregious harm to King, considering the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. *See Olivas*, 202 S.W.3d at 144; *Almanza*, 686 S.W.2d at 171.

*The Entire Jury Charge*

The jury charge was otherwise unexceptional. The abstract portion of the charge correctly set forth the definition of indecency of a child without including the improper "intentionally" or "knowingly." The jury charge as a whole lessens any potential harm suffered by King.

*The State of the Evidence*

Regarding the state of the evidence, the primary contested issue at trial was whether M.K.'s testimony was credible. As we explained more fully in addressing King's sufficiency of the evidence issues above, the specific intent required for the offense of indecency with a child may be inferred from King's conduct, his remarks, and all of the surrounding circumstances—specifically including M.K.'s testimony. *See McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. [Panel Op.] 1981). The jury, as the sole judge of the credibility of the witnesses and the weight to be given their

testimony, could have inferred that King had the intent to arouse or gratify his sexual desire from M.K.'s testimony about the incidents. *See id*.

*Arguments of Counsel*

Neither party discussed the precise elements as listed in the charge during their closing arguments. We find nothing in the closing arguments by either the State or King that indicates that King was harmed by the error.

*Other Information in the Trial as a Whole*

After a review of the record, we note that the indictments track the same objectionable language as the charge; however, King did not challenge the indictment. Any potential error in the indictment was therefore, waived. *See* TEX. CODE CRIM. PROC. ANN. art. 1.14(b) (Vernon 2005). The use of the phrase "intentionally and knowingly" was used intermittently during voir dire during the description of the offense by both the State and King. The State's opening statement did not include that reference but cited the statute correctly. King did not refer to it at all during his opening statement. We do not find that the trial as a whole more than minimally increased any potential harm to King.

We do not find that King was egregiously harmed by the erroneous inclusion of the terms "intentionally and knowingly" in the jury charge. We overrule issue five.

*Conclusion*

We find that the evidence was both legally and factually sufficient for the jury to have found King guilty of the offenses. We find that the trial court did not abuse its discretion in the admission of the testimony of the therapist. We find that the trial court did not abuse its discretion in the discharge of juror Davis. We find that while there

was error in the jury charge, King was not egregiously harmed by that error.  We affirm

the judgments of the trial court.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
        Justice Reyna, and
        Justice Davis
Affirmed
Opinion delivered and filed September 1, 2010
Do not publish
[CRPM]