

**IN THE**
**TENTH COURT OF APPEALS**

**No. 10-19-00019-CR**

**JUAN GABRIEL CERVANTES,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 361st District Court**
**Brazos County, Texas**
**Trial Court No. 14-04555-CRF-361**

## O P I N I O N

Juan Cervantes was indicted in Count 1 for the offense of indecency with a child

by contact and in Count 2 for the offense of indecency with a child by exposure. The jury

convicted Cervantes on both counts, and the trial court assessed punishment at twenty

years confinement in Count 1 and eight years confinement in Count 2. The trial court

ordered the sentences to run consecutively. We affirm.

## BACKGROUND FACTS

Emily Johnson and Cervantes were married for a short time in 2006 and had a daughter, I.C. After they divorced, Emily and I.C. lived in Louisiana, and I.C. would go for visitation in Texas with Cervantes. In March 2011, I.C. told her aunt, Emily's sister, and her grandmother, Emily's mother, some things about Cervantes that they found concerning. I.C. told her grandmother that Cervantes made her sit on his lap and "do this." I.C. then made a hand gesture that her grandmother described as stroking a penis. They called Emily, and she reported what I.C. said to Child Protective Services in Louisiana. I.C. shut down and did not talk about the incident further at that time. I.C. did not have any further visitation with Cervantes.

In 2013, Cervantes left voice messages for Emily in which he acknowledged that I.C. had seen him naked and that he did have an erection while lying on the couch with I.C. After the voicemail messages, I.C. talked to Emily more about what happened with Cervantes. I.C. told Emily that Cervantes would lay on the couch behind her and rub himself in her "butt cheeks." I.C. also said that Cervantes came out of the shower naked with his "thing" up. I.C. further told Emily that Cervantes would sit on the couch with his "thing" out and make her touch it. Emily again contacted Child Protective Services, and eventually the Bryan Police Department.

Detective Chris Loup with the Bryan Police Department talked to Cervantes about the allegations. Cervantes told Detective Loup about other allegations against him made

by his first wife, Angela, and her daughter J.D. A warrant was issued for Cervantes's arrest.

Cervantes's sister testified at trial that after Cervantes and Angela split up, Cervantes assumed that Angela left because she found out about him and J.D. Cervantes told his sister that he had been "fruitful" with J.D. Cervantes then admitted to his sister that he had touched his penis on J.D. and also indicated that he had oral sex with J.D. His sister stated that it was known in their family that Cervantes had a problem with molesting girls and that they did not leave him alone with the girls in their family.

Angela testified at trial that she was married to Cervantes for 5 years and that her daughter, J.D. was 2 years-old when she married him. Angela stated that after she left Cervantes, he told her he had been "fruitful" with J.D. Angela said that when she asked Cervantes what he meant by that, he responded with statements like "you know what I mean and you know what I did."

### WITNESS TESTIMONY

In the second issue, Cervantes argues that he was deprived of his right of confrontation as provided by the Sixth Amendment of the United States Constitution when the trial court permitted D.W. to testify via Skype about an extraneous offense. D.W. is the niece of Cervantes. She lives in Wichita, Kansas and is a single mother of five children, including a breast-feeding newborn. Cervantes made a pre-trial objection to the State's request to allow D.W. to testify by Skype and moved for a continuance.

At the hearing on the motion for continuance, the trial court noted that it had read cases involving Skype and the appropriate way for people to testify without a violation of the confrontation clause. The trial court denied the continuance. In ruling on the admissibility of the testimony by Skype, the trial court found that system the court would be using allowed contemporaneous transmission and cross-examination. The trial court stated that the system allowed Cervantes to see the witness and the witness to see Cervantes as well as counsel for the State and Cervantes. The trial court noted that the jury would be able to observe the testimony on the large screen and observe the demeanor of the witness. The trial court found that the State, "has established a need with a young child being breastfed and a requirement of care for other children and that that is an exceptional circumstance allowing her to testify by webcam without violating a Sixth Amendment right to confrontation."

D.W. testified via Skype that when she was nine years-old she lived with her grandmother, Cervantes's mother, and that Cervantes also lived in the home. D.W. said that Cervantes asked her if he could see her naked and also asked her if she wanted to see him naked. Cervantes also asked D.W. if he could "make love to her." D.W. further testified that one time Cervantes touched her private area over her clothes.

The Sixth Amendment guarantees a defendant the right to be confronted with the witnesses against him. The "central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing

in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). The right of confrontation requires that the witness be placed under oath, the defendant be given the opportunity for cross-examination, and the factfinder be provided the opportunity to observe the witness's demeanor. *Id*. at 845-46. Although face-to-face confrontation is preferred, it must occasionally give way to considerations of public policy and the necessities of the case. *Maryland v. Craig,* 497 U.S. at 849; *Rivera v. State*, 381 S.W.3d 710, 712 (Tex. App.—Beaumont 2012, pet. ref'd).

This Court discussed increasing advancements in technology and its impact on witness testimony in *In re J.C.*, No. 10-18-00214-CV, 2018 LEXIS 8914 (Tex. App. —Waco October 31, 2018, no pet.). In *In re J.C.,* a witness was allowed to testify via Skype in a jury trial on an involuntary commitment. *In re J.C.*, 2018 LEXIS 8914 at * 9. This Court noted that with increasing advancements in technology, trial courts are being asked to use those advancements and appellate courts are asked to review those decisions. *Id* at *12. We held that, under the facts of that case, the procedure utilized in allowing the Skype testimony was not prohibited by any existing statute and that the trial court did not abuse its discretion in allowing the witness to testify via real time tele-video communication. *Id*. at *13.

Appellate courts are also asked to review decisions in allowing testimony by video communication in criminal trials. In *Acevedo v. State*, the trial court allowed a witness with a high-risk pregnancy to testify by way of a video conference system. *Acevedo v.*

*State*, No. 05-08-00839-CR, 2009 Tex. App. LEXIS 8109, 2009 WL 3353625, at \*23 (Tex. App.—Dallas Oct. 20, 2009, pet. ref'd) (not designated for publication).  The reviewing court noted that although a doctor had not confirmed the high-risk pregnancy, the trial court found the witness to be credible.  *Acevedo v. State* at \* 22.

The Skype system used in this case allowed for contemporaneous transmission and cross-examination.  D.W. confirmed that she could see both counsel tables on the screen and that she could see and in fact did identify Cervantes.  Counsel for Cervantes was able to cross-examine D.W. in the jury's presence, and the jury was able to view D.W. and her demeanor.  The record established that D.W. was caring for a breast-feeding newborn as well as four other children and that she resided in another state.  As such, the trial court utilized a system by which the witness could testify in an exceptional circumstance without violating Cervantes's Sixth Amendment right to cross-examine D.W.  We find that the necessities of the case allowed for the testimony by Skype.  We overrule the second issue.

**SUFFICIENCY OF THE EVIDENCE**

In the first issue, Cervantes argues that the evidence is insufficient to support his convictions in both counts for indecency with a child.  The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v.*

*Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (*citing Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

Count 1 of the indictment alleges that on or about December 1, 2010, Cervantes did:

> then and there, with the intent to arouse or gratify the sexual desire of said Defendant, intentionally or knowingly cause I.C., a child younger than 17 years of age, to engage in sexual contact by causing the said I.C. to touch the genitals of the Defendant,

Count 2 alleges that on or about December 1, 2010 Cervantes did:

> then and there, with the intent to arouse or gratify the sexual desire of said Defendant, intentionally or knowingly expose the defendant's genitals, knowing that I.C., a child younger than 17 years of age, was present

Cervantes first argues that the evidence is insufficient in Count 1 to show that he caused I.C. to touch his genitals. Emily's grandmother testified that in 2011, I.C. told her Cervantes made her sit on his lap and perform a gesture that she described as stroking a penis. Emily testified that in 2013, I.C. told her Cervantes made her touch his genitals while sitting on the couch. A child victim's outcry statement alone can be sufficient to sustain a conviction for a sexual offense. *Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991); *Jimenez v. State*, 507 S.W.3d 438, 442 (Tex. App.—Fort Worth 2016, no pet.).

Cervantes next argues that the evidence is insufficient in both counts to show that he had the requisite intent to arouse or gratify his sexual desires. The intent to arouse or gratify the defendant's sexual desire may be inferred from a defendant's conduct and all surrounding circumstances. *Ryder v. State*, 514 S.W.3d 391, 397 (Tex. App. —Amarillo 2017, pet. ref'd); *Jones v. State*, 229 S.W.3d 489, 497 (Tex. App.—Texarkana 2007, no pet.).

An oral expression of intent is not required, and a defendant's conduct alone is sufficient to infer intent. *Abbott v. State*, 196 S.W.3d 334, 341 (Tex. App.—Waco 2006, pet. ref'd).

I.C. told Emily that Cervantes made her touch his "thing" and that his "thing" was up when she saw him naked. I.C. said that Cervantes would rub himself between her "butt cheeks." Cervantes admitted in the voicemails that he had an erection while lying with I.C. The jury also heard testimony that Cervantes's family knew he had a problem molesting girls and that he made inappropriate sexual comments about female family members. Thus, the jury could infer from Cervantes's exposing his genitals to I.C. and having her touch his genitals that it was done with the intent to arouse or gratify his sexual desire. *See Abbott v. State*, 196 S.W.3d at 341. We overrule the first issue.

### OUTCRY WITNESSES

In the third issue, Cervantes argues that the trial court erred in allowing multiple witnesses to testify as outcry witnesses. We review the trial court's designation of an outcry witness under an abuse-of-discretion standard. *Polk v. State*, 367 S.W.3d 449, 452 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). A trial court's designation of an outcry witness will be upheld when supported by the evidence. *Id*. A trial court abuses its discretion when its ruling is outside the zone of reasonable disagreement. *Id*. Absent a clear abuse of discretion, a reviewing court will not disturb the trial court's ruling. *Id*.

Texas Code of Criminal Procedure Article 38.072 provides that some hearsay statements of a child under the age of 14 or person with a disability are admissible in

prosecuting certain offenses, including indecency with a child, as in this case. TEX. CODE CRIM. PROC. ANN. ART. 38.072 (West Supp. 2018). The statute applies to "statements that describe the alleged offense" and that (1) were made by the child against whom the offense allegedly was committed and (2) were made to the first person, eighteen years of age or older, other than the defendant, to whom the child made a statement about the offense. TEX. CODE CRIM. PROC. ANN. ART. 38.072 (West Supp. 2018); *Polk v. State*, 367 S.W.3d at 453. The statute has been construed to apply to the first adult to whom the complainant makes a statement that in "some discernible manner describes the alleged offense." *Id*. Outcry testimony is specific to an event instead of "person-specific." *Id*. More than one outcry witness may testify when the outcry statements are about differing events and not a repetition of the same events. *Id*.

Cervantes argues that Emily, her mother, and her sister all testify about the same Count 1 allegation. In a pre-trial hearing, the trial court heard testimony from all three of the potential witnesses. The trial court ruled that Emily's mother would be able to testify about the gesture I.C. made when telling her about Cervantes and that Emily would be able to testify about Cervantes exposing himself and having I.C. touch his private area as these were two separate events. Cervantes did not object to the trial court's ruling and did not object to the testimony presented at trial. In her initial testimony, Emily's sister did not describe the gesture by I.C. and only stated that I.C. told

her something that alarmed her. She was recalled and testified that she saw I.C. make the gesture when talking to Emily's mother.

The trial court did not abuse its discretion in allowing Emily and her mother to testify as outcry witnesses. Emily's mother's testimony was limited to describing a gesture made by I.C. when describing her interaction with Cervantes. Emily testified as to the statements I.C. made that Cervantes made her touch his "thing" while sitting on the couch. Although the testimony of both Emily and her mother describe sexual contact, the trial court did not abuse its discretion in finding that these were different events. When she was recalled, Emily's sister testified as to the same gesture described by Emily's mother; however, the testimony was a prior consistent statement under TEX. R. EVID. 801 (e) (1) (B) after cross-examination suggested fabrication by Emily, her mother, and her sister. The trial court did not abuse its discretion in allowing the testimony of Emily, her mother, and her sister. We overrule the third issue.

### CONCLUSION

We affirm the trial court's judgment.


JOHN E. NEILL
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Neill
Affirmed
Opinion delivered and filed December 4, 2019
Publish
[CR25]

